**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| GATEWAY DEVELOPMENT COMMISSION,<br><br>       Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>       Defendant. | No. 26-176 C |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED BRIEFING ON ITS MOTION FOR PARTIAL <u>SUMMARY JUDGMENT (COUNTS I – VI)</u>**

# **TABLE OF CONTENTS**

QUESTION PRESENTED ................................................................................................ 2

STATEMENT OF THE CASE .......................................................................................... 2

ARGUMENT ..................................................................................................................... 4

    I.    Expedited briefing is within the Court's discretion and appropriate here. ............. 4

    II.   Counts I – VI present straightforward breach-of-contract claims fit for expedited summary judgment. .................................................................................. 5

    III.  Delay will cause imminent, irreparable project impacts. ...................................... 10

CONCLUSION ................................................................................................................ 13

i

# TABLE OF AUTHORITIES

Page(s)

**Statutes**

28 U.S.C. § 1491 .................................................................................................................. 1, 4

**Court Rules**

R. Ct. Fed. Cl. Rule 1 ............................................................................................................ 4

R. Ct. Fed. Cl. Rule 16 .......................................................................................................... 4

R. Ct. Fed. Cl. Rule 56 .......................................................................................................... 4

**Other Authorities**

2 C.F.R. § 200.305 ............................................................................................................ 6–7

2 C.F.R. § 200.339 ................................................................................................................ 7

90 Fed. Reg. 47,969 (Oct. 3, 2025) ....................................................................................... 5

Build Am. Bureau, *Hudson River Tunnel Project Between New York and New Jersey*, U.S. Dep't of Transp., https://www.transportation.gov/buildamerica/projects/hudson-river-tunnel-project-between-new-york-and-new-jersey (last visited Jan. 30, 2026) .................................. 8

Board Meeting Public Comment, Gateway Program (January 27, 2026), https://www.youtube.com/watch?v=yJXIdcp14r4 ...................................................... 10, 11, 12

Plaintiff, the Gateway Development Commission ("GDC"), respectfully requests that this Court order expedited briefing on its Motion for Partial Summary Judgment on Counts I – VI of its Complaint. Because injunctive relief is generally unavailable under 28 U.S.C. § 1491(a)(1) in this damages action, a compressed schedule is the only practical means to address the severe, imminent harms facing GDC while preserving the Court's ability to adjudicate the merits.

Since 2023, GDC has spent approximately $2 billion and over 150 contractors, who collectively employ a thousand workers, have invested thousands of hours constructing the Hudson Tunnel Project ("HTP"). It has done so in reliance on grant and loan agreements with the Department of Transportation ("DOT") promising to pay approximately $15 billion to fund the more than $16 billion project. But since September 30, 2025, DOT has been in breach of those agreements, withholding $205,275,358 in reimbursements owed to GDC for project costs. DOT has withheld those funds without citing any contractually permissible basis for suspending reimbursement and without following the contractually specified procedures for implementing suspensions of funding. As a result of these breaches, in just four days—on February 6, 2026—GDC will be forced to suspend work on the project, leaving half-built construction sites with giant holes in the ground, sidelining approximately 150 contracting and subcontracting firms and putting many hundreds of workers they employ out of a job, and delaying the badly needed public works project. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████

That result would be devastating for GDC, for the contractors and workers on the project, and for the American public that desperately need this public works project. Accordingly, GDC respectfully requests that the Court enter a scheduling order for expedited briefing on GDC's

motion for partial summary judgment, which GDC will file on February 6, 2026. GDC proposes that DOT file its Response by February 17, 2026, GDC file its Reply by February 20, 2026, and the Court hold oral argument on or around February 24, 2026. GDC also requests a status conference on Tuesday, February 3, 2026, or at the Court's earliest convenience, to discuss this and any other case management issues necessary to facilitate the Court's prompt consideration of the merits.

## QUESTION PRESENTED

Whether the Court should enter a schedule for expedited resolution of GDC's forthcoming Motion for Partial Summary Judgment on Counts I – VI with February 6, 2026, February 17, 2026, and February 20, 2026 deadlines for GDC to file the motion, DOT to respond, GDC to reply, respectively, with the Court to hold oral argument on or around February 24, 2026.

## STATEMENT OF THE CASE

The HTP is the largest infrastructure program in the United States. It is intended to add a second rail tunnel between New Jersey and New York City and to rehabilitate the 116-year-old North River Tunnel, which sustained severe damage from Hurricane Sandy in 2012, compounding the more than a century of wear and tear the tunnel had already suffered. And the project is well on its way. For example, workers have completed over 75% of the concrete casing for the new tunnel that will pass under Hudson Yards on its way to Penn Station, putting that tunnel on track to be finished in 2026. In October 2025, the Tonnelle Avenue Bridge and Relocation Project was substantially completed, a necessary first step to allow tunnel boring activities to proceed. And tunnel boring is set to start in spring 2026, following the successful completion of manufacturing and testing of two specially designed tunnel boring machines (one of which was delivered to the project in January 2026)—each costing GDC approximately $25 million.

The DOT has committed approximately $15 billion to the HTP through a set of grant and loan agreements.  In reliance on those commitments, nearly $2 billion has already been invested, and approximately 150 contractors and subcontractors employing many hundreds of laborers have been hard at work on the project since 2023.  Yet on September 30, 2025, DOT breached its agreements, announcing that it would suspend all funding of the HTP while it conducted a review of the HTP's Disadvantaged Business Enterprise ("DBE") program.  DOT did not provide any contractually permissible basis for the breach.  The grant and loan agreements and the governing regulations contain several detailed provisions concerning when DOT can suspend funding and the procedures it must follow when it does so.  DOT did not even attempt to adhere to any of these provisions.  Nor has it attempted to do so in the four months that it has continued to withhold badly needed funds from the project.

As of this filing, DOT had improperly withheld $205,275,358 in reimbursements owed to GDC for project costs.  GDC has done everything it could to work with DOT to restore funding.  Each time the government has made a request in connection with its review of GDC's DBE program, GDC has swiftly responded, fulfilling each of the DOT's requests and demonstrating GDC's compliance—even though the binding agreements do *not* permit a funding suspension based on DOT's vague and shifting concerns about the DBE program.  The government has not responded to GDC's most recent correspondence, and it has not released the funds or given any indication of when it might do so.

During the four months in which GDC has been attempting to work with DOT, it has spent its own funds to keep the project moving forward.  But GDC has now run out of the funds that are necessary to allow construction across multiple job sites to continue.  Accordingly, on **February 6, 2026**, GDC will order the approximately 150 contracting and subcontracting firms working on the

HTP to stop work, which will cost GDC tens of millions of dollars in delays and penalties and cause many hundreds of construction workers to lose their jobs. ███████████

███████████

███████████

███████████

███████████

███████████

Moreover, the project's failure will come at the enormous expense to the States that threw their legislative and financial support behind the HTP in reliance on the federal government's fidelity to its funding commitments.

Left without any other choice, GDC filed this suit, seeking expedited judicial relief. Counts I – VI of the Complaint seek recovery of damages for the $205,275,358 in unreimbursed payments due to DOT's breach. Expedited resolution of Counts I – VI would limit substantially the severe and irreparable consequences of DOT's breaches and protect the workforce, the HTP, and the public that relies on safe and reliable rail service. GDC therefore respectfully requests that the Court adopt its proposed schedule for partial summary judgment, ███████████

███████████

███████████ .

## ARGUMENT

I. **Expedited briefing is within the Court's discretion and appropriate here.**

The Court has broad discretion to manage its docket, including to set expedited briefing where doing so secures the "just, speedy, and inexpensive determination" of an action. RCFC 1; *see also id.* 16, 56. Because injunctive relief is generally unavailable under 28 U.S.C. § 1491(a), an expedited briefing schedule on GDC's motion for partial summary judgment is the only

practical means for the Court to mitigate severe project impacts while preserving its ability to decide the merits.

## II.     Counts I – VI present straightforward breach-of-contract claims fit for expedited summary judgment.

The facts underlying GDC's claims for DOT's breaches of the HTP Grant and Loan Agreements are straightforward, making this case fit for speedy resolution on summary judgment. DOT committed approximately $15 billion in federal assistance for the HTP—approximately 90% of total project costs.  Under the Agreements, DOT promised to provide regular reimbursements for certain costs of building the project.  Relying on those commitments, GDC has advanced planning, design, procurement, and construction across an integrated program of ten interdependent projects, four of which are now in active construction, with a fifth project substantially completed.  And until September 30, 2025, DOT paid GDC within 30 days of each reimbursement request, as required by federal regulations and the terms of the Agreements.

On September 30, 2025, on the eve of a federal government shutdown and in the midst of apparently broken-down negotiations between the President and Congress, DOT informed GDC it was immediately suspending payments across all six of the Agreements while it reviewed GDC's DBE program.  GDC's DBE program is implemented pursuant to DOT's DBE regulations; DOT's DBE regulations, in turn, are "intended to level the playing field for [small] businesses" that are "owned and controlled by 'socially and economically disadvantaged individuals'" who are "seeking to participate in federally assisted contracts." 90 Fed. Reg. 47,969, 47,970 (Oct. 3, 2025). To that end, "Congress has mandated by statute that DOT treat certain individuals—women and members of certain racial and ethnic groups—as 'presumed' to be disadvantaged." *Id.* at 47,970. DOT announced its intent to remove those sex- and race-based presumptions from its DBE regulations via an October 3, 2025 Interim Final Rule ("IFR"). *Id.* at 47,971. But three days *before*

5

the IFR took effect, on September 30, 2025, DOT informed GDC that it was reviewing GDC's DBE program and immediately suspending payments across all the HTP Grant and Loan Agreements during the pendency of the DBE review.

DOT has continued to withhold funding, citing vague and evolving concerns about GDC's DBE program for four months.  Each time DOT has raised a concern, GDC has swiftly addressed it and demonstrated GDC's compliance.  Yet despite these efforts, DOT has now withheld the $205,275,358 in unreimbursed payments, and it has given no indication of when it might release those payments and begin reimbursing future requests.

Even putting aside the federal government's myriad statements suggesting that the funding termination is linked to HTP's status as a "Democratic Program" and actions taken during the federal government shutdown in October 2025, *see* Compl. ¶¶ 15, 141–144, DOT's failure to reimburse constitutes blatant substantive and procedural breaches of the Agreements, for numerous reasons.

*First,* DOT has substantively breached the Agreements.  To start, the Agreements and federal regulations require payment of a request for reimbursement of eligible costs within 30 days unless the agency reasonably believes the request is improper. *See, e.g.*, Compl. Ex. 1 (FTA CIG Grant) at 18; 2 C.F.R. § 200.305(b)(3).  DOT has been in breach of this requirement since September 30, 2025, when it abruptly ceased reimbursement of the significant costs GDC is incurring from carrying out the HTP—and now owes GDC a staggering $205,275,358.

The Agreements also allow for withholding of payments owed to GDC only in the narrow circumstances where DOT has determined that GDC has breached or defaulted on the Agreements, failed to make reasonable progress on the project, or failed to comply with any law or the terms of the Agreements.  Compl. Ex. 1 at 18 (DOT may withhold funding from GDC or suspend GDC's

drawdown of funds only upon the government's determination that GDC "is in breach of this Agreement"); Compl. Ex. 2 (FTA Master Agreement) at 50 (DOT may withhold payments only if GDC "has failed to make reasonable progress," continued payment "does not adequately serve the purposes of the law authorizing the Award," or GDC "has violated the terms of the Underlying Agreement"); Compl. Ex. 3 at 16-17 (FRA FSP Grant) (DOT may impose a remedy if it determines that GDC has failed to comply with law or the agreement's terms); Compl. Ex. 5 (FTA RAISE Grant) at 21-22 (same); Compl. Ex. 6 (collectively with Compl. Exs. 7-8, the three RRIF Loans), ex. D at D-2 (DOT may withhold payment only if GDC is in default, fails to construct the project in accordance with its purpose, violates the law, or fails to satisfy the conditions for payment,); Compl. Ex. 7, ex. D at D-2 (same); Compl. Ex. 8, ex. D at D-2 (same); *see also* 2 C.F.R. § 200.305(b)(6) (payment must not be withheld unless the recipient "has failed to comply with the terms and conditions" of the award or "is delinquent in a debt to the United States as defined in OMB Circular A-129").[1]

*None* of these circumstances is present here, and the government has never contended otherwise. In fact, in its September 30, 2025 letter to GDC concerning its DBE program, DOT did not state that it had determined that GDC was in breach or had failed to comply with any law or the terms of the Agreements. Compl. ¶ 150. Yet DOT continues to withhold vital funding from

---

[1] DOT also has a longstanding practice, pursuant to federal regulations and published guidance, of terminating funding only as a last resort for noncompliance. Federal regulations authorize DOT to take various actions when a grantee "fails to comply with the . . . terms and conditions of the Federal award," such as "[t]emporarily withhold[ing] payments until the recipient or subrecipient takes corrective action" and "[w]ithhold[ing] further Federal funds . . . for the project or program." 2 C.F.R. §§ 200.339(a), (e). While DOT may also "[s]uspend or terminate" funding, it cannot terminate an award "in part or in its entirety" unless it "determines that noncompliance cannot be remedied by imposing specific conditions." *Id.* §§ 200.339(a), (c). As discussed below, DOT has made no specific determination that terminating the funding is the only way to remedy noncompliance—it has not even made a finding of noncompliance.

7

GDC, jeopardizing the livelihoods of thousands of workers over the life of the HTP and threatening to force GDC to permanently shutter the HTP altogether. DOT's funding termination also undermines the public health, safety, and environmental benefits of the project, which will increase passenger and worker safety, especially in the event of an evacuation, by rehabilitating aging rail infrastructure, and protect rail operations against future extreme weather events, including by installing new floodgates on both sides of the Hudson River. Build Am. Bureau, *Hudson River Tunnel Project Between New York and New Jersey*, U.S. Dep't of Transp., https://www.transportation.gov/buildamerica/projects/hudson-river-tunnel-project-between-new-york-and-new-jersey (last visited Jan. 30, 2026) [https://perma.cc/5F2T-EGKV].

*Second*, DOT has procedurally breached the HTP Grant and Loan Agreements, failing at every step of the way to comply with the processes for withholding payments to GDC under the Agreements and governing federal regulations. DOT's stated basis for the withholding has been its review of GDC's DBE program. But DOT wholly failed to provide GDC with the notice and opportunity to cure the alleged breach or noncompliance that the Agreements and federal regulations required it to before withholding payments. Compl. Ex. 1 at 18 (DOT must provide 90 days' written notice and "a reasonable period of time to respond and to take necessary corrective action" before withholding funding from GDC or suspending GDC's drawdown of funds); Compl. Ex. 2 at 50 (DOT may suspend payment "[a]fter providing written notice" to GDC); Compl. Ex. 3 at 16-18 (DOT may impose a remedy if GDC has failed to comply with law or terms of the agreement only after notifying GDC of a proposed determination of noncompliance, providing GDC with an opportunity to respond, and notifying GDC of DOT's final determination); Compl. Ex. 5 at 21-22 (same); Compl. Ex. 6 at 49 (if GDC defaults on the agreement, but the default does

8

not concern payments or development, DOT must provide GDC with notice of the default and an opportunity to cure); Compl. Ex. 7 at 49 (same); Compl. Ex. 8 at 49 (same).

DOT has fallen far short of its procedural obligations to GDC by providing GDC with neither notice of the funding termination, nor an opportunity to cure any breach that could possibly justify the termination. It has done so even as GDC has made every effort to comply with its legal obligations, including its non-discrimination obligations, in anticipation of federal regulatory changes. Compl. ¶¶ 152–170. And it provides zero explanation for taking such drastic and abrupt measures.

In short, DOT has identified *no* breach, default, or noncompliance by GDC under the HTP Grant and Loan Agreements. Nor has DOT provided the written notice and opportunity to cure any alleged breach, default, or noncompliance that the Agreements require as a precondition to withholding funds. Nonetheless, DOT continues to withhold payments from GDC. Because DOT has no valid basis under the HTP Grant and Loan Agreements to withhold payment, DOT is in breach for failing to pay GDC's reimbursement requests within the required 30 days, and Counts I – VI are ripe for prompt resolution on summary judgment.

No discovery is necessary to resolve these counts, as the operative agreements and reimbursement requests are exhibits to GDC's Complaint, and DOT has identified no instance of contractual noncompliance triggering a right to withhold. The dispositive question is a straightforward question of contract interpretation: whether DOT breached the 30-day payment obligation under the Agreements. The parties can expeditiously brief that issue to allow the Court to enter an order for DOT to pay each of the improperly withheld reimbursements before GDC and the HTP are irreparably harmed. With that funding, GDC can continue to advance active

9

design, procurement, and construction activities on the HTP, safeguarding the livelihoods of the thousand workers on the project.[2]

### III. Delay will cause imminent, irreparable project impacts.

DOT has breached its disbursement obligations under its agreements with GDC to the tune of $205,275,358. *See* Compl. Exs. 13-1, 14-1, 18-1, 22-1, 23-1 (August through December 2025 Packages). That's $205,275,358 in federal funds GDC was relying upon when it began construction in 2023 and continued construction efforts through 2025. Now, the HTP is at a critical, and perhaps terminal, point. ███████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████ "There's no way around it"; "the federal funding *has* to be restored" to keep "this project moving." January 27, 2026 Board Meeting Public Comment, Gateway Program, https://www.youtube.com/watch?v=yJXIdcp14r4 (statement of Jerry Keenan, President, NJ Alliance for Action); *see* Compl. Ex. 24 at 7. But DOT's ongoing contractual violations mean that no more money is coming. GDC thus has no choice but to suspend work, and GDC will do so in four days, on February 6, 2026. Compl. Ex. 24 at 7.

The suspension will be disastrous. The livelihood of many hundreds of workers is threatened. *Id.* at 8. The jobs the HTP creates are "vital" for workers "to continue to work and provide for their families." January 27, 2026 Board Meeting Public Comment (statement of Steve Valeira, Heavy and General Construction Laborers Local 472). Once the HTP is paused, the "real stability for working families" it provides will be, too. *Id.* (statement of Santos Rodriguez, New York City Building Construction Trades Council).

---

[2] The remaining counts concerning other damages caused by DOT's improper suspension of funding can be resolved on a standard schedule.

The suspension will also send GDC reeling, particularly because it comes "after so much progress" on the project. *See id.* (statement of Balpreet Grewal-Virk, GDC New Jersey Commissioner & Co-Chair); *see also* Compl. Ex. 24 at 11-18. GDC will need to demobilize work crews, remove and store equipment (including two 1,680-ton tunnel boring machines with 500-foot gantries), stabilize and secure active construction sites along the HTP's nine-mile span, and restore construction sites to a condition safe for public access and use. *See* Compl. Ex. 24 at 6–8.

Every day the HTP sits on pause, costs go up. *Id.* at 7–8. And it is not as simple as just hitting "resume." The design, engineering, and construction activities required for HTP are too complex; work across the ten interdependent construction packages is tightly sequenced to meet limited access windows and to align critical milestones, including the commencement of tunnel-boring in spring 2026. *See generally id.* at 11–18. The suspension will disrupt that sequence and drive up permanent cost and schedule impacts with every passing day, further depleting GDC's remaining reserves.

The project cannot sit on pause forever: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

If the HTP fails, "millions of Americans, of all political persuasions, in New York, New Jersey, and across the northeast and mid-Atlantic" "would be harmed irreparably." January 27, 2026 Board Meeting Public Comment (statement of Sen. Chuck Schumer). The jobs would be gone forever, as would the nearly $20 billion of economic activity supported more broadly by the

11

HTP. Compl. Ex. 24 at 8. Riders would have to continue to rely on the 116-year-old, and Hurricane Sandy–worn, North River Tunnel, which, if ever shut down, would cost the national economy $16 billion and reduce property values by even more. *Id.* at 9. And the credibility of the federal government as a reliable contracting partner would be called into question. Put simply, the "fallout for our economy and our nation" from the project's failure would "be catastrophic." January 27, 2026 Board Meeting Public Comment (statement of Alicia Glen, GDC New York Commissioner & Co-Chair).

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Compl.

¶ 20. ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

*See* Compl. ¶ 29.

GDC has done all it can to maintain the project and uphold its end of the bargain, support the people of New York and New Jersey, and comply with DOT's instructions during DOT's months' long breach. On October 2, 2025, GDC confirmed its commitment to working with DOT on its review of GDC's DBE program and advised DOT of specific steps GDC had taken to align its program with Executive Orders issued in January 2025 and subsequent FTA guidance. Compl. Ex. 15. Two weeks later, GDC thoroughly responded to a DOT information request about GDC's DBE program, explaining the steps GDC had taken and was taking to conform its DBE plan to the IFR. Compl. Ex. 17. On December 8, 2025, GDC provided DOT a requested certification and description of GDC's DBE verification procedures, and GDC committed to review all DBE subcontractors in response to specific DOT concerns. Compl. Ex. 20. On January 8, 2026, GDC sent DOT a letter explaining that GDC had completed its review of each of its subcontractors'

12

DBE status and confirmed that all conformed to DOT's asks. Compl. Ex. 21. GDC never received a response to that letter.

GDC has also been putting its money where its mouth is. To keep the project alive, employing workers, and supporting local economies, GDC has drawn down on its capital reserves and a separate $500 million credit line. *See* Compl. Ex. 24 at 6-7. And GDC had good reason to front the project costs after DOT stopped sending GDC its funds: DOT told GDC a funding pause would be "temporar[y]," Compl. Ex. 12, and, later, that it "intend[ed] to recommence reimbursements upon [a] certification" from GDC that GDC promptly provided, Compl. Ex. 19.

GDC is now at a critical inflection point. GDC cannot continue operations without the past-due payments. If this Court acts quickly enough, GDC may be able to avert the catastrophe that a long-term suspension—[redacted]—of the HTP would inflict on the many hundreds of construction workers actively engaged, on the many thousands of workers to be engaged, and on the New York, New Jersey, and national economies.

## CONCLUSION

GDC does not lightly ask the Court for expedited relief. Since the funding pause, DOT has repeatedly stated, publicly and privately, that funding would resume if GDC provided the requested information regarding its DBE program. GDC provided that information and agreed to make changes to its DBE program that DOT has requested, even though the grant and loan agreements do *not* permit a funding suspension in these circumstances. GDC nonetheless promptly complied with the understanding that funding would then resume, withheld amounts would then be disbursed, and the project would proceed without requiring judicial intervention. That has not occurred.

DOT's ongoing, wrongful failure to reimburse GDC under the HTP Grant and Loan Agreements threatens to shutter the entire project, which has already made significant progress in

over two years of construction and already cost nearly $2 billion dollars. Relief is needed, now. Expedited briefing would allow the Court to address the narrow, purely legal questions presented on an urgent but orderly schedule, minimizing the severe risk of layoffs facing the project's workers, protecting the public interest in safe and reliable rail service, and preserving the status quo while the merits are adjudicated.

For the foregoing reasons, GDC respectfully requests that the Court grant its Motion for Expedited Briefing on its Motion for Partial Summary Judgment (Counts I – VI).

| | |
|---|---|
| Date: February 2, 2026 | Respectfully submitted, |
| | /s/ *Neal Kumar Katyal* |
| | Neal Kumar Katyal |
| | Colleen E. Roh Sinzdak |
| | MILBANK LLP |
| | 1101 New York Avenue NW |
| | Washington, DC 20005 |
| | Email: nkatyal@milbank.com |
| | Email: crohsinzdak@milbank.com |
| | Telephone: (202) 835-7505 |
| | |
| | Gurbir S. Grewal |
| | MILBANK LLP |
| | 55 Hudson Yards |
| | New York, NY 10001 |
| | Email: ggrewal@milbank.com |
| | |
| | John R. Prairie |
| | Andrew J. Pincus* |
| | J. Ryan Frazee |
| | MAYER BROWN LLP |
| | 1999 K Street NW |
| | Washington, DC 20006 |
| | Email: jprairie@mayerbrown.com |
| | Email: apincus@mayerbrown.com |
| | Email: rfrazee@mayerbrown.com |
| | |
| | Graham White* |
| | MAYER BROWN LLP |
| | 1221 Avenue of the Americas |
| | New York, NY 10020 |
| | Email: gwhite@mayerbrown.com |
| | |
| | *Counsel of Record for Gateway Development Commission* |
| | |
| | *Pro hac vice forthcoming* |