IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GATEWAY DEVELOPMENT COMMISSION,<br><br>        Plaintiff,<br><br>        v.<br><br>THE UNITED STATES,<br><br>        Defendant. | No. 26-176 C |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR EXPEDITED BRIEFING ON ITS MOTION FOR <u>PARTIAL SUMMARY JUDGMENT (COUNTS I – VI)</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ADDITIONAL BACKGROUND ............................................................................................... 5

ARGUMENT ................................................................................................................................ 6

I.    This Court has ample authority to award expedited summary judgment and damages, which do not qualify as impermissible injunctive relief. .................................................... 6

II.    DOT cannot delay partial summary judgment proceedings by pursuing needless discovery. .......................................................................................................................... 7

III.    Partial final judgment is warranted here. ....................................................................... 10

IV.    Expedited Summary Judgment is badly needed in light of the profound harms GDC will continue to suffer. ................................................................................................... 11

CONCLUSION ........................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Am. Sav. Bank, F.A. v. United States*,
　50 Fed. Cl. 586 (2001) ................................................................................................................9

*Am. Sav. Bank, F.A. v. United States*,
　83 Fed. Cl. 555 (2008) ..............................................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ....................................................................................................................8

*Beta Sys., Inc. v. United States*,
　838 F.2d 1179 (Fed. Cir. 1988) ..............................................................................................9, 10

*Brunswick Corp. v. Sheridan*,
　582 F.2d 175 (2d Cir. 1978) ................................................................................................ 10-11

*Burnside-Ott Aviation Training Ctr., Inc. v. United States*,
　985 F.2d 1574 (Fed. Cir. 1993) ...................................................................................................8

*Chevron U.S.A. Inc. v. United States*,
　72 Fed. Cl. 817 (2006) ................................................................................................................8

*CliniComp Int'l, Inc. v. United States*,
　134 Fed. Cl. 736 (2017) ..............................................................................................................6

*Jianglin Zhou v. United States*,
　727 F. App'x 651 (Fed. Cir. 2018) ..............................................................................................8

*Landis v. N. Am. Co.*,
　299 U.S. 248 (1936) ....................................................................................................................6

*Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*,
　169 F.3d 747 (Fed. Cir. 1999) ................................................................................................9, 10

*Navajo Tribe of Indians v. United States*,
　220 Ct. Cl. 360 (1979) ................................................................................................................6

*New Jersey v. U.S. Dep't of Transp.*,
　No. 26-CV-00939, 2026 WL 323341 (S.D.N.Y. Feb. 6, 2026) ......................................1, 2, 3, 5

*New Jersey v. U.S. Dep't of Transp.*,
　No. 26-cv-00939, slip op. (S.D.N.Y. Feb. 9, 2026) ....................................................................3

*San Antonio Housing Auth. v. United States*,
　143 Fed. Cl. 425 (2019) ..............................................................................................................7

*Stockton E. Water Dist. v. United States*,
  120 Fed. Cl. 80 (2015) ...................................................................................................11

*Two Shields v. United States*,
  119 Fed. Cl. 762 (2015) .........................................................................................8, 9, 10

*White Mountain Apache Tribe of Ariz. v. United States*,
  5 Cl. Ct. 288 (1984) ................................................................................................ 11-12

**Statutes**

5 U.S.C. §§ 551-559 .............................................................................................................1

**Other Authorities**

Fed. R. App. P. 8..................................................................................................................3

Plaintiff, the Gateway Development Commission ("GDC"), respectfully submits this reply memorandum of law in further support of its motion to expedite partial summary judgment briefing ("Motion").

## PRELIMINARY STATEMENT

In its Motion to Expedite, GDC explained that this case involves a straightforward breach of contract dispute that can be resolved quickly and without discovery. Since the Motion to Expedite was filed, the Department of Transportation ("DOT") has largely acknowledged as much—albeit not before this Court. In its filings and oral presentation in *New Jersey v. U.S. Department of Transportation*, No. 26-CV-00939, 2026 WL 323341 (S.D.N.Y. Feb. 6, 2026)—a case in which New Jersey and New York successfully sought a temporary restraining order ("TRO") against DOT's unlawful funding suspension on the ground that it violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, and federal regulations—DOT argued that this Court is the proper forum to address the lawfulness of DOT's funding suspension because it is a "straightforward breach of contract case." Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order and in Support of Defendants' Motion to Dismiss ("TRO Opp.") at 3, *New Jersey v. U.S. Dep't of Transp.*, 2026 WL 323341 (No. 26-CV-00939), Dkt. No. 41 (quoting Compl. ¶ 1, Dkt. No. 1). And DOT said the same to the Second Circuit in seeking a stay of that TRO. *See* Defendants Appellants' Emergency Motion for a Stay Pending Appeal and for an Immediate Stay During the Consideration of this Motion ("Stay Mot.") at 4, *New Jersey v. U.S. Dep't of Transp.*, No. 26-282 (2d. Cir. Feb.9, 2026), Dkt. No. 9.1 ("GDC contends '[t]his is a straightforward breach of contract case.' That is correct . . . ." (alteration in original) (citation omitted)).

DOT's filings in the APA suit have also conceded the material facts in this case: DOT has acknowledged the existence of the Hudson Tunnel Project ("HTP") Grant and Loan Agreements

at the heart of this suit, describing them as binding agreements to provide approximately $15 billion in funding for the project. TRO Opp. at 3. It has recognized that "the HTP Grant and Loan Agreements govern (1) what constitutes a breach or event of default; (2) the circumstances in which DOT may withhold funding from GDC or suspend GDC's drawdown of funds; and (3) the procedural requirements attendant to DOT's withholding or suspension of funding." *Id.* It has further acknowledged that, on September 30, 2025, DOT "informed GDC that it would temporarily pause reimbursements for the [HTP] during the administrative review" of GDC's DBE program, and "[t]o date, funding has not resumed." *Id.* at 3-4. And at the TRO hearing in the APA suit, DOT reiterated that "the government's September 30th decision to suspend funding" is the "only thing" preventing funding from flowing to GDC under the HTP Grant and Loan Agreements. Oral Argument Transcript at 26, *New Jersey v. U.S. Dep't of Transp.*, 2026 WL 323341 (No. 26-CV-00939).

In other words, DOT itself views this case as presenting straightforward breach of contract claims, and it does not contest the facts underlying the claims. It admits there are binding funding agreements in the amounts specified in GDC's complaint; it admits the agreements establish when and through what procedures DOT may suspend funding; and it admits that DOT in fact suspended funding through the September 30, 2025, letter imposing an immediate funding pause based on DOT's administrative review of the DBE program. Given these admissions, the *only* disputed question is whether the HTP Grant and Loan Agreements permit DOT to suspend funding in these circumstances—a pure question of law that can readily be decided through expedited summary judgment based on the plain text of the HTP Grant and Loan Agreements.

The recent proceedings in the APA action also confirm the extraordinary need for expedited relief here. DOT has suggested that expedited summary judgment proceedings are

2

unnecessary because GDC can obtain full damages at the conclusion of more protracted merits proceedings. But the District Court flatly rejected DOT's similar argument in the APA action, explaining that the shutdown of the HTP caused by DOT's unlawful suspension of funding will have immediate and severe consequences that no damages can remedy—including the "immediate and severe impact on the region's economic interests," the threat to the livelihoods of the hundreds of workers currently employed on the HTP and the tens of thousands that will be employed over the project's lifetime, and the "predicted . . . loss of $7.3 billion in annual GDP associated with completion of the" HTP. *New Jersey v. U.S. Dep't of Transp.*, No. 26-cv-00939, slip op. at 5 (S.D.N.Y. Feb. 9, 2026). Expedited summary judgment is necessary to prevent or at least mitigate these harms by remedying the DOT breaches of contract that brought them about in the first place.

Nor does the District Court's recent grant of a TRO in the APA proceeding affect the need for expedited relief in this suit. For one thing, that TRO is currently stayed, and DOT is actively attempting to have it wiped from the books entirely. This very morning, DOT filed twin motions for an administrative stay and a stay pending appeal in the District Court and the Second Circuit, asserting that the TRO is invalid because the States' APA suit "is a disguised breach-of-contract claim" over which this Court has exclusive jurisdiction under the Tucker Act. *See* Defendants' Memorandum of Law Pursuant to Fed. R. App. P. 8(a) for a Stay Pending Appeal at 3, *New Jersey v. U.S. Dept' of Transp.*, 2026 WL 323341 (No. 26-CV-00939), Dkt. No. 48. In its stay requests, DOT stated that it needed an administrative stay no later than 1 p.m. today or it would be forced to release the approximate $205 million the District Court determined was unlawfully withheld. The Second Circuit did not act on DOT's request before the 1 pm deadline, but the District Court gave DOT a partial reprieve—denying the requested stay pending appeal, but granting an

3

administrative stay through February 12, 2026, at 5:00 p.m., to allow the Second Circuit to consider the stay motion.

GDC vehemently disagrees with DOT's view that the APA action—brought by States that are not parties to the contract to pursue claims that are not rooted in breach of contract—cannot proceed concurrently with this breach of contract action. But DOT's position makes the need for expeditious relief from this Court all the more apparent. If DOT prevails in its challenge to the TRO, expedited summary judgment in this Court is the only way to prevent the grievous and irreparable harms that are already resulting from the funding freeze. Without swift relief, numerous workers will remain unemployed; construction sites will remain suspended with large holes in the ground creating risk to the public, and the American public will be deprived of a badly needed transportation project to ensure the safety and reliability of rail travel for hundreds of thousands of daily passengers. Moreover, every day the United States is permitted to renege on its funding agreements without consequences, the federal government's reputation as a reliable contracting party diminishes, threatening the viability of future public works initiatives, including the projects within the HTP that have not yet been procured.

In these circumstances, the case for expedited summary judgment proceedings is overwhelming. The tepid arguments DOT marshals in its response to the Motion to Expedite do nothing to suggest the contrary. DOT asserts that the Motion is a disguised request for injunctive relief this Court lacks the power to grant, but GDC has made very clear that it is asking for summary judgment and damages for DOT's obvious breach of its contract in the undisputed amount that DOT has improperly withheld. Damages are a quintessential contracts remedy that this Court frequently grants. DOT also asserts that summary judgment is inappropriate because it needs additional discovery, but that assertion is at odds with what DOT told the District Court in

the APA action, where it acknowledged all of the material facts underlying this matter are not in dispute. Nor is there any risk of judicial error from adopting GDC's proposed schedule. As the motion for summary judgment filed contemporaneously with this reply makes clear, this case is cut and dried. And DOT's observations that expedited and partial summary judgment are rare and that monetary relief will ultimately be available all miss the point: This is an *exceptional* case where delay inflicts *exceptional* harms, such that prompt relief not only serves the interests of the public but also is essential in the interest of justice. This Court should grant GDC's proposed schedule.

## ADDITIONAL BACKGROUND

The day after GDC commenced this action and filed the Motion, the States of New York and New Jersey filed suit in the U.S. District Court for the Southern District of New York against DOT, the Federal Railroad Administration, the Federal Transit Administration, the Build America Bureau, and several government officials. On February 6, 2026, the District Court presiding over the APA suit issued a temporary restraining order enjoining the defendants "from implementing the September 30, 2025 suspension of federal disbursements for the Hudson Tunnel Project" pending resolution of the States' application for a preliminary injunction. *New Jersey v. U.S. Dep't of Transp.*, 2026 WL 323341, at *4. Accordingly, GDC delayed filing its motion for partial summary judgment ("MPSJ") in this action while awaiting indication of whether DOT would appeal that order, disburse the funds owed to GDC, or continue to withhold funds. DOT then noticed its appeal yesterday, Notice of Appeal, *New Jersey v. U.S. Dep't of Transp.*, No. 26-cv-00969, Dkt. No. 46, and today the District Court administratively stayed its TRO until February 12, 2026 to enable DOT to seek a stay via that appeal, *New Jersey v. U.S. Dep't of Transp.*, slip op. at 1, 5. GDC is therefore filing its MPSJ contemporaneously with this reply.

## ARGUMENT

I. **This Court has ample authority to award expedited summary judgment and damages, which do not qualify as impermissible injunctive relief.**

GDC's Motion asks this Court to expedite its consideration of the first six counts in GDC's Complaint and to enter a prompt damages award based on the obvious breaches of contract described in those counts. The Court has ample authority to grant that request because it "has inherent power 'to control the disposition of the causes on its docket with economy of time and effort.'" *CliniComp Int'l, Inc. v. United States*, 134 Fed. Cl. 736, 753 (2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). That power—which is "inherent in every court," *Landis*, 299 U.S. at 254—gives the Court the ability to "establish[] an expedited briefing schedule." *CliniComp*, 134 Fed. Cl. at 753; *cf., e.g.*, *Navajo Tribe of Indians v. United States*, 220 Ct. Cl. 360, 368 (1979) ("Unless drastic and effective steps are taken to expedite the proceedings in these . . . cases, they threaten to drag on indefinitely. The trial judges have an obligation to expedite these cases, and to take all necessary steps to insure their speedy determination."). Indeed, the Rules of the United States Court of Federal Claims ("RCFC") explicitly identify "expediting disposition of the action" as one purpose of pretrial conferences. RCFC 16(a)(1).

DOT errs in characterizing GDC's request for an expedited schedule as "essentially seeking" impermissible "injunctive relief masked as an immediate money judgment award," Def.'s Resp. to Pl.'s Mot. for Expedited Briefing on Partial Summ. J. at 2, Dkt. No. 16. The Complaint makes abundantly clear that GDC seeks neither an injunction nor specific performance. *See* Compl. 74. Rather, GDC pursues "money damages . . . in the amount of $205,275,357.69 for DOT's failure to make required payments and reimbursements." *Id.*[1] "Nowhere in the

---

[1] In a separate count (Count VII) for which GDC has *not* sought expedited summary judgment, GDC seeks "additional money damages . . . for the costs of . . . work suspension." Compl. 74.

6

[C]omplaint does [GDC] request specific performance." *San Antonio Housing Auth. v. United States*, 143 Fed. Cl. 425, 450 (2019). GDC simply seeks "compensatory damages . . . to place [GDC] in the position it should have been had the breach not occurred." *Id.* And DOT cites no authority for its novel suggestion that an award of summary judgment and damages somehow becomes equitable relief if awarded expeditiously.

## II. DOT cannot delay partial summary judgment proceedings by pursuing needless discovery.

In its Motion, GDC explained that this case can be resolved through expedited summary judgment because the material facts are not in dispute. In response, DOT vaguely asserts that it needs some form of discovery regarding GDC's claims, but that assertion is flatly inconsistent with DOT's statements in the parallel APA suit, where DOT has conceded all of the basic facts underlying this breach of contract case.

In its opposition to the TRO, DOT acknowledged the existence of the funding agreements and the amounts promised under those agreements. Opposition to Plaintiff's Motion for a Temporary Restraining Order, *supra*, at 3. It acknowledged that those agreements specify the circumstances in which DOT can suspend funds and the procedures it must follow in doing so. *Id.* It acknowledged that DOT imposed a funding suspension through the September 30, 2025, letter announcing that it would withhold funds in connection with DOT's administrative review of the DBE program. *Id.* DOT further acknowledged that it has not since paid any of the reimbursement requests within the time period required. *Id.* at 3-4. And at the TRO hearing, DOT conceded that the September 30, 2025 suspension was the *only* thing stopping the funds from flowing. Oral Argument Transcript, *supra*, at 26 ("The only thing [vacating the September 30, 2025 suspension] does is turn the funding spigot back on . . . . [T]he natural consequence of the relief that [the States are] seeking is that DOT, therefore, must resume paying under the contract . . . .").

7

Given all of these concessions, the only thing this Court needs to decide is whether the terms of the HTP Grant and Loan Agreements permitted DOT to impose the September 30, 2025, suspension. That is a pure question of law that can be decided based on the plain text of the agreements, and it isn't even hard. The MPSJ sets out all of the relevant contract provisions, and none permit a funding freeze in these circumstances.

In light of all this, DOT's generalized contention that it needs discovery before summary judgment cannot be credited. Moreover, DOT misconstrues the precedents it cites in support of its argument that discovery is necessary and ignores basic contract interpretation principles in the process. While an "opportunity to discover information" ordinarily precedes summary judgment, *Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1582 (Fed. Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)), a party's entitlement to discovery extends only to "information that is essential to his opposition." *Id.* at 1582 (quoting *Anderson*, 477 U.S. at 250 n.5). That limitation is consistent with the limits imposed more broadly by RCFC 26(b), which confines discovery to matters "relevant to any party's claim or defense and proportional to the needs of the case." RCFC 26(b)(1); *cf. Two Shields v. United States*, 119 Fed. Cl. 762, 782 (2015) ("To be entitled to [RCFC 56(d)] discovery, 'a party must state with precision the material he hopes to obtain with further discovery and how that material will allow the party to oppose summary judgment and rebut any showing of the absence of a genuine issue of fact.'" (quoting *Chevron U.S.A. Inc. v. United States*, 72 Fed. Cl. 817, 819 (2006))).

The bounds of permissible discovery are particularly restrictive in contract cases, where, "in the absence of an ambiguity" in the contract, "the court must rely on the language of the documents at issue and may not consider extrinsic evidence." *Jianglin Zhou v. United States*, 727 F. App'x 651, 654 (Fed. Cir. 2018). Nor can a litigant wield extrinsic evidence "to create an

8

ambiguity where a contract was not reasonably susceptible of different interpretations." *Two Shields*, 119 Fed. Cl. at 784 (quoting *Metric Constructors, Inc. v. Nat'l Aeronautics & Space Admin.*, 169 F.3d 747, 752 (Fed. Cir. 1999)); *see also Beta Sys., Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988) ("[E]xtrinsic evidence will not be received to change the terms of a contract that is clear on its face."); *Am. Sav. Bank, F.A. v. United States*, 50 Fed. Cl. 586, 587 (2001) ("It is hornbook law that . . . parol evidence cannot be used to vary the unambiguous terms of a written contract."). Accordingly, a party opposing summary judgment "cannot merely assert the existence of ambiguities that the text of the contracting documents belie to open the door to liability discovery." *Am. Sav. Bank*, 50 Fed. Cl. at 587.

Here, DOT articulates no need whatsoever for pre-MPSJ discovery. DOT merely gestures toward "ongoing construction projects," the amount of damages GDC seeks, the length and volume of the Complaint and its exhibits, and a generic concern that "[t]here may be 'questions of material fact underlying the issue of contract interpretation.'" *Id.* at 8 (quoting *Beta Sys.*, 838 F.2d at 1183). But what relevance ongoing HTP work conceivably could have to whether DOT previously breached its payment obligations is a mystery. Nor does DOT articulate any challenge to the dollar amount of the withheld funds. In fact, in the APA action, DOT told the courts that—before the stay was issued—"the government ha[d] begun processing GDC's $205 million worth of reimbursement requests," reflecting that DOT shares GDC's understanding of the total amount of the unpaid reimbursements. Stay Mot. at 22.

And DOT's concerns about the size of the pleadings are baffling considering DOT has long had in hand every single exhibit for months (and historically was always able to respond within 30 days to reimbursement requests like those exhibited), aside, conceivably, from *one* publicly available GDC meeting deck and *one* media publication—neither of which has any bearing on the

MPSJ because both merely illustrate the extreme need for expedited process here. *Compare* Compl. Exs. 1–8 (HTP Grant and Loan Agreements), *id.* Ex. 9 (social media post by Director of U.S. Office of Management and Budget), *id.* Ex. 10 (public announcement of DOT review), *id.* Exs. 13-1 to 14-11, 18-1 to 18-5, 22-1 to 23-12 (reimbursement request materials), *and id.* Exs. 15–17, 19–21 (correspondence concerning DOT review), *with id.* Ex. 11 (media publication), *and id.* Ex. 24 (GDC meeting deck).

Finally, DOT's allusion to unspecified, hypothetical contract interpretation disputes is a paradigm of "creat[ing] an ambiguity" when none exists, *Two Shields*, 119 Fed. Cl. at 784 (quoting *Metric Constructors*, 169 F.3d at 752), and runs headfirst into the rule that "extrinsic evidence will not be received" when "a contract that is clear on its face," *Beta Sys.*, 838 F.2d at 1183. In this case, DOT itself has recognized that the plain terms of the contract govern when and how a funding suspension may be imposed. Opposition to Plaintiff's Motion for a Temporary Restraining Order, *supra*, at 3. GDC's Complaint quotes and cites all of those provisions, none of which remotely authorizes an immediate funding suspension in light of an administrative review. Nor has DOT pointed to any other contract provisions that might be read to permit the funding suspension here. DOT cannot defeat a request for expedited summary judgment by referencing hypothetical evidentiary disputes regarding hypothetical contract terms.

### III.  Partial final judgment is warranted here.

DOT also misses the mark with its observation that "a summary judgment decision resolving some but not all claims ordinarily does not lead to an enforceable judgment." Def.'s Resp. 9. DOT asserts that Counts VII and VIII of the Complaint "are inarguably intertwined with the counts as to which GDC is seeking partial summary judgment" because Count VII "aris[es] from the same allegedly breaching actions" and Count VIII "is inextricably tied up with questions of contractual duties." *Id.* at 10. DOT then argues that a partial final judgment would contravene

the judicial "policy against piecemeal appeals of intertwined claims." *Id.* at 10 (quoting *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 185 (2d Cir. 1978)). But the first six counts merely ask this Court to recognize that DOT has breached its contract by withholding funds and to award damages in the amount of the withheld funds. There is no reason this Court cannot decide those counts, leaving for another day the remaining two counts that ask for damages and a finding of lack of good faith that both require a trial. There is no "intertwining" that would prevent that course of action.

On the other side of the ledger, the harms that GDC has detailed and that the district court articulated in the APA suit more than illustrate that "there is no just reason for delay" and thus that partial final judgment is appropriate. RCFC 54(b). And the apparent unavailability of interest on the damages awards here only strengthens this conclusion. *Stockton E. Water Dist. v. United States*, 120 Fed. Cl. 80, 84 (2015) ("Further delay in providing payment to Central appears to the Court unjust, particularly since Central is not entitled to recover any interest on its award."); *Am. Sav. Bank, F.A. v. United States*, 83 Fed. Cl. 555, 559 (2008) ("Postponing Plaintiffs' receipt of what DOT owes to Plaintiffs would only serve to further injure the Plaintiffs and benefit the breaching party as the award does not accrue pre-judgment or post-judgment interest.").

### IV. Expedited Summary Judgment is badly needed in light of the profound harms GDC will continue to suffer.

GDC's motion for expedited summary judgment details the profound and irreparable harms that have resulted and will continue to result from DOT's breaches of contract, necessitating swift summary judgment relief. In response, DOT erroneously contends that "[i]rreparable harm is, of course, a concept" that "does not apply" outside the injunction context, Def.'s Resp. 11. But DOT misstates the law. The RCFC set default filing periods for responses opposing and replies supporting motions for summary judgment. RCFC 7.2(b)(1). The RCFC also set a "good cause" standard for extending time. RCFC 6(b)(1). That standard applies equally to motions to shorten

11

time, and the potential for irreparable harm clearly constitutes "good cause." *See White Mountain Apache Tribe of Ariz. v. United States*, 5 Cl. Ct. 288, 290 (1984) ("The time limits set by order under RUSCC 6(a) can only be enlarged or shortened by order entered in the court's discretion under RUSCC 6(b), which requires a showing of good cause with respect to a motion filed before an act is required to be done.").

DOT also errs in asserting that swift summary judgment is not necessary because any harms can be redressed through damages. That argument simply ignores the nature of the profound injuries to GDC and the HTP itself; the States of New York and New Jersey and their residents; many hundreds of workers whose livelihood depends on the HTP's survival; and countless Northeast Corridor passengers that will ensue if the Court does not expedite proceedings. *See New Jersey v. U.S. Dep't of Transp.*, slip op. at 4-5 (noting "immediate and severe impact on the region's economic interests, "imminent risk" to jobs, and projected "loss of $7.3 billion in annual GDP"). While swift monetary damages will abate these harms, the delay DOT seeks will only compound them.

## **CONCLUSION**

For these reasons and the reasons set forth in GDC's opening memorandum, GDC respectfully requests that the Court grant the Motion.

Date:  February 9, 2026                                   Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
MILBANK LLP
1101 New York Avenue NW
Washington, DC 20005
Email: nkatyal@milbank.com
Email: crohsinzdak@milbank.com
Telephone: (202) 835-7505

Gurbir S. Grewal
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Email: ggrewal@milbank.com


John R. Prairie
Andrew J. Pincus*
J. Ryan Frazee
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Email: jprairie@mayerbrown.com
Email: apincus@mayerbrown.com
Email: rfrazee@mayerbrown.com

Graham White*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Email: gwhite@mayerbrown.com

*Counsel of Record for Gateway Development Commission*

*Pro hac vice forthcoming*

13