IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| GATEWAY DEVELOPMENT COMMISSION, | |
| Plaintiff, | No. 26-176C |
| v. | Judge Richard A. Hertling |
| THE UNITED STATES, | |
| Defendant. | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND THE SCHEDULE AS TO PLAINTIFF'S MOTION <u>FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff, the Gateway Development Commission ("GDC"), respectfully submits this opposition to Defendant's Motion to Amend the Schedule as to Plaintiff's Motion for Partial Summary Judgment ("Motion" or "Mot."), Dkt. No. 22.

## PRELIMINARY STATEMENT

The U.S. Department of Transportation ("DOT") asks the Court to delay resolution of GDC's motion for partial summary judgment ("MPSJ") for months because DOT has complied with a temporary restraining order ("TRO") in another court by disbursing funds to GDC, even though it is presently seeking a stay of that TRO from the Second Circuit and refusing to represent to GDC that it will not attempt to claw back the disbursed funds if the Second Circuit grants the stay. As GDC explained to DOT before it filed the instant motion, without such confirmation, the exigency remains because GDC may be left without funding for a badly needed $16 billion public works project at any moment. As GDC has further explained, it is black letter law that a claim for damages remains live unless and until the defendant pays the damages "voluntarily." *112 Genesee St., LLC v. United States*, 172 Fed. Cl. 426, 450 (2024). DOT obviously has not done that here because it has disbursed the funds only pursuant to a court order that it is actively challenging, leaving GDC uncertain as to how long it will have access to the funds DOT paid. This uncertainty has already delayed the award of two major contracts (including the contract for tunneling under the Hudson River) for the Hudson Tunnel Project ("HTP"), and—while GDC will restart work on the project this week—it does so without any assurances that funding will continue.

Certainty of funding is exactly what GDC's Grant and Loan Agreements with DOT are designed to confer, and as the government has acknowledged, breach of contract suits in *this* Court are the means through which GDC is entitled to enforce those commitments. Accordingly, this Court should reject the government's request to extend the expedited preliminary summary

judgment schedule given the government's pending Second Circuit challenge to the TRO and its failure to voluntarily pay GDC the damages it is owed.

## STATEMENT OF THE CASE

On February 2, 2026, GDC commenced this action for breach of contract against DOT based on DOT's failure to satisfy its funding obligations under the HTP Grant and Loan Agreements. The first six counts of the Complaint allege that DOT has breached each of the Grant and Loan Agreements by announcing and enforcing a funding suspension on September 30, 2025; those claims seek damages in the amount of the past-due funding disbursements. Compl. ¶¶ 184-327, Dkt. No. 1. The two additional counts seek reimbursement for the additional costs GDC has incurred and continues to incur as a result of the withheld payments and assert that DOT has breached its duty of good faith and fair dealing, respectively. *Id.* ¶¶ 328-58.

In a motion filed simultaneously with the Complaint, GDC moved for expedited summary judgment on its first six counts. Pl.'s Mot. Expedite Partial Summ. J. (Counts I – VI), Dkt. No. 2. Then on February 9, 2026, GDC filed its motion for partial summary judgment. Pl.'s Mot. Partial Summ. J. (Counts I – VI), Dkt. No. 19. In its motions, GDC explained that DOT had breached its contractual obligations to reimburse GDC's costs for constructing the HTP and, as a result of those breaches, GDC was forced to suspend work on the HTP on February 6, 2026—inflicting severe and continuing harms on GDC, the workers who lost their jobs, the States that supported the project, and the public that would benefit from it.

After DOT opposed expedition of MPSJ proceedings, GDC filed its reply. In that reply, GDC explained that New York and New Jersey had filed an Administrative Procedure Act ("APA") action in the Southern District of New York challenging DOT's funding suspension. *See* Pl.'s Reply Supp. Mot. Expedite at 1-4, Dkt. No. 17 (citing and discussing *New Jersey v. U.S. Dep't of Transp.*, No. 26-cv-00939, 2026 WL 323341 (S.D.N.Y. Feb. 6, 2026)). GDC further

observed that on February 6, 2026, the District Court granted the States' motion for a TRO setting aside the basis for the funding suspension. *Id.* But GDC explained that the TRO did not obviate the need for expedited MPSJ proceedings in this case because the government had argued that the District Court lacked subject matter jurisdiction over the APA challenge and the government was actively appealing and seeking a stay of the TRO on that basis before the Second Circuit. *Id.* at 3-4. Moreover—at the time GDC filed the reply—the TRO was subject to an administrative stay from the District Court to allow the Second Circuit to consider the government's motion for a stay of the TRO pending its appeal. *Id.*

This Court held a status conference on February 10, 2026, during which it extensively discussed the interplay between this suit and the District Court APA action. In response to the Court's questioning, GDC's counsel recognized that the District Court action could moot GDC's request for expedited summary judgment, but *only if* the TRO caused DOT to pay the entirety of the more than $205 million the government owed GDC under GDC's first six breach of contract claims *and* DOT confirmed that it would not attempt to claw back those funds if the TRO were stayed or vacated. GDC's counsel also emphasized that, even if DOT confirmed that it would not seek to recoup the payments, GDC's remaining two contract claims would need to be litigated in the ordinary course.

After the status conference, this Court issued an order partially granting GDC's motion to expedite the MPSJ proceedings. Scheduling Order, Dkt. No. 21. It ordered DOT to respond to the MPSJ by February 27, 2026, and scheduled oral argument for March 12, 2026. *Id.* The government immediately filed a Rule 28(j) letter in the Second Circuit informing the Court of Appeals that this Court's decision to grant expedited partial summary judgment proceedings on the breach of contract claims constituted an additional reason for the Second Circuit to grant the

government's request for a stay of the TRO in the APA suit. Defs.-Aplts.' Feb. 10, 2026 Rule 28(j) Letter Regarding *GDC v. United States*, Dkt. No. 13, *New Jersey v. U.S. Dep't of Transp.*, No. 26-00282 (2d Cir. Feb. 10, 2026) ("The expedited schedule in the Court of Federal Claims demonstrates that that court is moving quickly to resolve the issues before it. Given that plaintiffs in this case are seeking the same relief as GDC is pursuing in the Court of Federal Claims, an administrative stay and stay pending appeal of the district court's order is especially warranted to avoid interfering with the pending parallel litigation in the *GDC* matter.").

Two days later, the Second Circuit issued an order referring the government's request to stay the TRO "to a motions panel sitting as early as the week of February 23, 2026." Mot. at 3 n.2; *see* Order, Dkt. No. 18, *New Jersey v. U.S. Dep't of Transp.*, No. 26-00282 (2d Cir. Feb. 12, 2026). The government's request for a stay has yet to be assigned to a specific motions panel, but once the request is assigned, the motions panel will decide whether to stay the TRO pending the government's appeal.

On the same day that the Second Circuit deferred disposition of the stay request, the District Court's administrative stay expired, and the TRO went back into effect. Since then, the government has disbursed the $205,275,357.69 in past due funds, as well as $30,477,545.41 of the $49,778,756.92 that GDC had requested through its January 30, 2026 reimbursement submission, for which payments are due on March 2, 2026. McCoy Decl. ¶ 3.[1] Because of these disbursements, GDC announced that the HTP would resume construction this week. GDC, *Gateway Development Commission Statement on Disbursement of Federal Funds for Hudson Tunnel Project* (Feb. 18, 2026), https://www.gatewayprogram.org/wp-content/uploads/2026/02/GDC-Statement-on-Disbursement-of-Federal-Funds-2026.02.18.pdf. But, given the continuing uncertainty over

---

[1] Decl. of Patrick J. McCoy in Supp. of Pl.'s Mem. Opp'n to Mot., dated Feb. 23, 2026.

4

whether the government will attempt to claw back the disbursed funds or honor its future payment obligations if the TRO is lifted, GDC issued letters to other professional service contractors limiting the work to be performed due to the uncertainty of continued funding. McCoy Decl. ¶ 4. Also due to the uncertainty of continued funding, GDC has deferred the award of major contracts necessary to continue the HTP on its established schedule. *Id.* ¶ 5. Moreover, as a result of the work suspension that was in place between February 6, 2026 and February 22, 2026, GDC has incurred millions of dollars in additional costs, including those for additional security at work sites for the duration of the shutdown. *Id.* ¶ 6.

Since the DOT's recent disbursement of the funds at issue, DOT's and GDC's counsel have conferred regarding the effect of those disbursements on the expedited MPSJ proceedings in this case. Given the government's request for a stay of the TRO and a related appeal in the Second Circuit, GDC asked for confirmation that the government would not attempt to claw back the funds if that stay were granted. Absent such confirmation, GDC explained that it could not agree to a motion mooting its claims or delaying the expedited proceedings because the exigency had not resolved, because DOT could attempt to take back the disbursed funds and force another work suspension. DOT then filed the instant motion for an extension of the partial summary judgment briefing schedule, seeking to delay filing its response until April 10, 2026—six weeks after the current deadline and more than a month after its response would have been due under the standard partial summary judgment schedule.

## ARGUMENT

DOT's position that it has resolved the MPSJ's urgency by complying with the TRO— despite simultaneously challenging that TRO before the Second Circuit—does not withstand scrutiny. Because DOT is actively appealing and seeking a stay of the TRO, and because the agency has refused to provide any assurance that it will allow GDC to keep the more than $205

million it is owed in damages if the TRO is stayed, the exigency continues. While the funds GDC has received under the TRO have allowed it to resume some construction on the HTP, uncertainty regarding whether GDC will be able to keep those funds and whether the government will continue to meet its contractual obligations in the future have already forced GDC to defer the award of major contracts pending final resolution of its claims. McCoy Decl. ¶¶ 4-5. Moreover, as things stand, DOT could attempt to reclaim the money it has paid under the TRO at any time—potentially forcing *another* costly work suspension. *Id.* ¶ 8.

The government's request to slow this case down because of the existing TRO is fundamentally inconsistent with what it has told the Second Circuit. The government has repeatedly told the Second Circuit that breach of contract claims in *this* Court are the only way to get relief for any claims that DOT's funding suspension was unlawful. *See* Defs.-Aplts.' Mot. Stay Pending Appeal at 4, 9-22, Dkt. No. 9, *New Jersey*, No. 26-00282 (2d Cir. Feb. 9, 2026); Defs.-Aplts.' Reply Supp. Mot. Stay Pending Appeal at 3-9, Dkt. No. 12, *New Jersey*, No. 26-00282 (2d Cir. Feb. 10, 2026). Indeed, the government relied on the expedited partial summary judgment schedule in this case to support its pending request to the Second Circuit to stay the TRO. *See* Feb. 10, 2026 Rule 28(j) Letter, *New Jersey*, No. 26-00282 (2d Cir. Feb. 10, 2026) (arguing, in light of "[t]he expedited schedule in the Court of Federal Claims," that "an administrative stay and stay pending appeal of the district court's order is especially warranted to avoid interfering with the pending parallel litigation in the *GDC* matter"). DOT should not be permitted to make that argument before the Second Circuit, while simultaneously relying on the TRO as a basis for prolonging the summary judgment schedule before this Court.

Moreover, DOT's request for an extension of its partial summary judgment response through April 10, 2026, is particularly audacious because—as DOT concedes—even under a

6

standard, non-expedited schedule the response would be due March 9. Mot. at 5. DOT offers no reason why it should be entitled to an extra month beyond the ordinary schedule when every additional day forces GDC to manage a $16 billion project without any certainty regarding whether the government will adhere to its contracts or at least pay appropriate damages if it does not.

Conspicuously, DOT does not and cannot assert that GDC's damages claims are moot. It is black letter law that—while a defendant's tender of damages may moot a breach of contract claim—"an *actual* tender is required for mootness." *Rothe Dev. Corp. v. Dep't of Def.*, 545 F.3d 1023, 1032 (Fed. Cir. 2008). And for an actual tender to occur, the defendant "must hand over the full sum *without stipulation or condition.*" *Jarrett v. United States*, 79 F.4th 675, 678 (6th Cir. 2023) (Sutton, C.J.) (emphasis added). Or, as this Court has put it, "[t]he only way for the plaintiffs' claims for money damages to be mooted is for them to receive grants or otherwise be *voluntarily* compensated by the defendant. Unless and until this happens, their claims are not moot." *112 Genesee St., LLC v. United States*, 172 Fed. Cl. 426, 450 (2024) (emphasis added), *aff'd*, No. 2025-1373, 2026 WL 290936 (Fed. Cir. Feb. 4, 2026). There is nothing unconditional or voluntary about DOT's payments here. To the contrary, DOT has repeatedly refused to confirm that it will not attempt to claw back the more than $205 million GDC is owed in damages if the TRO is stayed. And far from making the payments voluntarily, DOT continues to seek to overturn that TRO, including via a pending stay motion. Because GDC's breach of contract claim entitles it to an unconditional award of $205,275,357.69 in damages, and because it has not yet received an unconditional payment from the government in that amount, the suit remains live.

The suit also continues to have tremendous practical importance for GDC. Again, the government has asserted that *this* Court is the only one with authority to address and remedy the federal government's unlawful suspension of funding for the HTP. GDC therefore needs durable

7

relief from this Court to reestablish the certainty with respect to its funding that GDC is entitled to under its HTP Grant and Loan Agreements.  If and when this Court holds that DOT has breached its contracts by withholding funds and awards GDC damages in the amount of the unpaid funds, GDC will have the free-and-clear funds that it is entitled to under its contracts.  And GDC will also have the knowledge that, going forward, if DOT again breaches its funding obligations, GDC will be able to return to this Court to get damages to compensate for those breaches.  For example, GDC has outstanding January 2026 reimbursement requests for $18,880,269 that will be due on March 2, 2026.  McCoy Decl. ¶ 7.  DOT has refused to confirm that it will pay that money if the TRO is stayed, meaning that GDC may soon have to amend its Complaint to add a breach of contract claim for the March breach.  And at the end of February, GDC will submit a claim for its February costs, which will be due April 1, 2026.  *Id.*  Again, GDC has no certainty as to whether those claims will be paid or whether DOT will breach again, *id.*, especially because of the government's own decision to continue appealing this TRO before the Second Circuit.

  Of course, none of this is to suggest that this Court should address breach of contract claims that have not come to fruition.  But the possibility of these future claims demonstrates why it is so important for GDC to get resolution of its *existing*, readily justiciable breach of contract claims now.  Expeditious resolution of these claims will give both GDC and DOT the benefit of a judicial determination of the parties' rights and obligations under their contracts from a court whose authority is recognized by *both* parties.  Unless and until this Court issues such a determination— or the government's challenge to the authority of the District Court in the APA suit is conclusively rejected—GDC will be forced to proceed without any certainty as to its funding.  That is an untenable situation for a massive public works project, the many hundreds of workers it employs, and the public that badly needs this transportation infrastructure.

## **CONCLUSION**

For the foregoing reasons, GDC respectfully opposes the Motion.

Date:  February 23, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
MILBANK LLP
1101 New York Avenue NW
Washington, DC 20005
Email: nkatyal@milbank.com
Email: crohsinzdak@milbank.com
Telephone: (202) 835-7505

Gurbir S. Grewal
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Email: ggrewal@milbank.com

John R. Prairie
Andrew J. Pincus*
J. Ryan Frazee
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Email: jprairie@mayerbrown.com
Email: apincus@mayerbrown.com
Email: rfrazee@mayerbrown.com

Graham White*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Email: gwhite@mayerbrown.com

*Counsel of Record for Gateway Development Commission*

**Pro hac vice forthcoming*

9