No. 26-176C
(Judge Hertling)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GATEWAY DEVELOPMENT COMMISSION,
Plaintiff,

**PUBLIC VERSION**

v. ███████████████

THE UNITED STATES,
Defendant.

## DEFENDANT'S PARTIAL MOTION
## TO DISMISS, RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
## JUDGMENT, AND MOTION FOR DISCOVERY PURSUANT TO RULE 56(d)

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

GEOFFREY M. LONG
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington D.C.  20044
Telephone: (202) 307-1059
E-Mail: Geoffrey.M.Long@usdoj.gov

February 27, 2026                    Attorneys for Defendant

███████████████

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF THE ISSUES ........................................................................... 2

STATEMENT OF THE CASE ............................................................................... 2

    I.    Nature of The Case ........................................................................ 2

    II.    The Parties' Agreements ................................................................ 3

    III.    DOT's Suspension of Disbursements ............................................ 4

    IV.    This Lawsuit and Post-Filing Events ............................................ 6

ARGUMENT ...................................................................................................... 9

    I.    Legal Standards ............................................................................ 9

    II.    Counts I–VI of The Complaint Should Be Dismissed as Moot ............... 9

    III.    Even if Counts I–VI Were Not Moot, GDC's Motion Must Be
Denied Due to DOT's Payment by DOT of All Reimbursements
Allegedly Withheld ...................................................................... 16

    IV.    DOT's Actions Are Consistent with Its Regulatory Obligation to
Ensure That Federal Funds Are Lawfully Spent .......................... 17

    V.    The Government Seeks Limited Discovery, Pursuant to RCFC
56(d), Relating to GDC's Compliance with applicable Federal law,
including DBE Requirements, to Determine the Viability of a
Conditions Precedent Defense ..................................................... 20

    VI.    The Court Should Decline to Certify Final Judgment Pursuant to
RCFC 54(b) ................................................................................. 23

CONCLUSION .................................................................................................. 24

## TABLE OF AUTHORITIES

<u>Cases</u>

*112 Genesee St., LLC v. United States*,
  172 Fed. Cl. 426 (2024) ......................................................................................... 10

*AccelGov, LLC v. United States*,
  166 Fed. Cl. 606, 610 (2023) ................................................................................. 10

*Acetris Health, LLC v. United States*,
  949 F.3d 719 (Fed. Cir. 2020) ................................................................................. 9

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) .......................................................................................... 12, 14

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ........................................................................................... 9, 21

*Beatley v. Ayers*,
  851 F. App'x 332 (4th Cir. 2021) ........................................................................... 10

*BroadReach Healthcare Pty Ltd. v. United States*,
  177 Fed. Cl. 371 (2025) ...................................................................................... 9, 15

*Brunswick Corp. v. Sheridan*,
  582 F.2d 175 (2d Cir. 1978) ................................................................................... 23

*Burnside-Ott Aviation Training Ctr., Inc. v. United States*,
  985 F.2d 1574 (Fed. Cir. 1993) .............................................................................. 21

*Casitas Mun. Water Dist. v. United States*,
  543 F.3d 1276 (Fed. Cir. 2008) ............................................................................... 9

*CBY Design Builders v. United States*,
  105 Fed. Cl. 303 (2012) ........................................................................................... 9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................... 21

*Chapman L. Firm Co. v. Greenleaf Constr. Co.*,
  490 F.3d 934 (Fed. Cir. 2007) ................................................................................ 10

*Clear Creek Cmty. Servs. Dist. v. United States*,
  100 Fed. Cl. 78 (2011) ............................................................................................ 21

*Cmty. Health Choice, Inc. v. United States*,
  970 F.3d 1364 (Fed. Cir. 2020) .............................................................................. 11

*Conservation Force, Inc. v. Jewell*,
    733 F.3d 1200 (D.C. Cir. 2013) ................................................................. 11

*Convertino v. U.S. Dep't of Just.*,
    684 F.3d 93 (D.C. Cir. 2012) ..................................................................... 21

*Dunkin' Donuts of America v. Metallurgical Exoproducts Corp.*,
    840 F.2d 917 (Fed. Cir. 1988) .................................................................... 21

*Energy Nw. v. United States*,
    91 Fed. Cl. 531 (2010) ............................................................................... 16

*eSimplicity, Inc. v. United States*,
    122 F.4th 1373 (Fed. Cir. 2024) ................................................................... 9

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................... 14

*Grant v. United States*,
    74 U.S. 331 (1868) ..................................................................................... 14

*Intergraph Corp. v. Intel Corp.*,
    253 F.3d 695 (Fed. Cir. 2001) .................................................................... 23

*Jarrett v. United States*,
    79 F.4th 675 (6th Cir. 2023) ................................................................. 11, 12

*Kane v. U-Haul Int'l Inc.*,
    218 F. App'x 163 (3d Cir. 2007) ................................................................ 10

*Kingdomware Techs., Inc. v. United States*,
    579 U.S. 162 (2016) ................................................................................... 15

*Landram v. United States*,
    229 Ct. Cl. 855 (1982) ............................................................................... 10

*Loc. Initiative Health Auth. for L.A. Cnty. v. United States*,
    145 Fed. Cl. 746 (2019) ............................................................................. 23

*Los Angeles Cnty. v. Davis*,
    440 U.S. 625 (1979) ................................................................................... 14

*Lowery v. United States*,
    167 Fed. Cl. 28 (2023) ............................................................................... 13

*McDonald v. United States*,
    13 Cl. Ct. 255 (1987) ................................................................................. 16

iii

*McNeely v. State Farm Lloyds*,
  2022 WL 14915590 (N.D. Tex. Oct. 25, 2022) ........................................................ 11

*Miller v. Robertson*,
  266 U.S. 243 (1924) ................................................................................................ 11

*Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.*,
  915 F.3d 764 (Fed. Cir. 2019) ................................................................................ 10

*Perry v. United States*,
  294 U.S. 330 (1935) ................................................................................................ 14

*Poteete v. Capital Engineering, Inc.*,
  185 F.3d 804 (7th Cir. 1999) .................................................................................. 12

*Prairie Band Potawatomi Nation v. Yellen*,
  63 F.4th 42 (D.C. Cir. 2023) .................................................................................. 10

*Pryor v. United States*,
  85 Fed. Cl. 97 (2008) .............................................................................................. 13

*Romero v. Allstate*,
  2017 WL 895593 (E.D. Pa. Mar. 7, 2017) .............................................................. 11

*San Carlos Irrig. & Drainage Dist. v. United States*,
  877 F.2d 957 (Fed. Cir. 1989) ................................................................................ 17

*Severin v. United States*,
  99 Ct. Cl. 435 (1943) .............................................................................................. 14

*Tender Years Learning Corp. v. United States*,
  134 Fed. Cl. 336 (2017) .......................................................................................... 10

*Thirteen Inv. Co., Inc. v. Foremost Ins. Co. Grand Rapids Mich.*,
  67 F.4th 389 (7th Cir. 2023) .................................................................................. 16

*Trusted Integration, Inc. v. United States*,
  659 F.3d 1159 (Fed. Cir. 2011) ................................................................................ 9

*United Launch Servs., LLC v. United States*,
  139 Fed. Cl. 664 (2018) .......................................................................................... 16

*United States v. King*,
  395 U.S. 1 (1969) .................................................................................................... 13

<u>Statutes</u>

28 U.S.C. § 1491(a) ............................................................................................ 9, 13, 14

Rules

Fed. R. Civ. P. 56 ................................................................................................ 21

RCFC 12(b)(1) ...................................................................................................... 9

RCFC 54(b) ............................................................................................... 2, 23, 24

RCFC 56 ....................................................................................................... passim

Regulations

2 C.F.R. Part 200 ............................................................................................... 19

2 C.F.R. § 200.300(a) .................................................................................... 19, 20

49 C.F.R. Part 26 ............................................................................................... 18

49 C.F.R. § 26.81 ................................................................................................. 6

Other Authorities

Executive Order 14173 ........................................................................................ 4

*Attorney General James Provides Update on Gateway Project Funding*, https://ag.ny.gov/press-release/2026/attorney-general-james-provides-update-gateway-project-funding [https://perma.cc/TU8T-C3Y7] (last checked Feb. 19, 2026) ...................................................... 8

*Work resumes on the Hudson River rail tunnel project, but NJ Transit delays continue*, WHYY (Feb. 22, 2026), https://whyy.org/articles/hudson-river-rail-tunnel-construction-continues-new-york-new-jersey/ .................................................................................................... 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GATEWAY DEVELOPMENT              )
  COMMISSION,                   )
                                 )
       Plaintiff,                )                                                  **PUBLIC VERSION**
                                 )
     v.                         )    No. 26-176C
                                 )    Judge Hertling
THE UNITED STATES,              )
                                 )
       Defendant.               )

### DEFENDANT'S PARTIAL MOTION TO DISMISS, RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND MOTION FOR DISCOVERY PURSUANT TO RULE 56(d)

Defendant, the United States, respectfully responds to the motion for partial summary judgment (MPSJ) filed by plaintiff, Gateway Development Commission (GDC).  Pl. MPSJ., ECF No. 18.[1]  The Court should dismiss as moot Counts I–VI of GDC's complaint – the subject of the MPSJ – because the United States, through the Department of Transportation (DOT), has paid to GDC the reimbursements that provide the sole basis for GDC's alleged damages in those counts.  To the extent the Court declines to dismiss those counts, the MPSJ should be denied based on the Government's defense of payment – there is no dispute that the Government has paid to GDC all sums sought as damages in the MPSJ.  GDC also has not demonstrated breach of the agreements at issue.  Finally, the Court in any event should decline to grant summary judgment at this time, and instead should permit the Government to conduct discovery, pursuant to Rule 56(d) of the Rules of the Court of Federal Claims (RCFC), on the issue of GDC's compliance with Disadvantaged Business Enterprises (DBE) program requirements.

---

[1]  We cite to the public versions of GDC's motion (ECF No. 18) and memorandum in support (ECF No. 18-1), unless otherwise indicated.  We cite to the pagination applied by the Court's electronic case filing system.

## STATEMENT OF THE ISSUES

1.    Whether Counts I–VI of GDC's complaint are moot due to the payment, by DOT, of $205,275,358 in reimbursements, where the prior suspension of those reimbursements was the sole basis for the breach damages sought by GDC in Counts I–VI.

2.    To the extent Counts I–VI are not moot, whether the MPSJ must be denied based on the affirmative defense of payment.

3.    To the extent the Court does not deny the motion based on the Government's payment defense, whether GDC has demonstrated entitlement to summary judgment based on breach of contract.

4.    Whether, pursuant to RCFC 56(d) and before the Court decides GDC's motion, the Government should be allowed to conduct discovery regarding GDC's compliance with DBE program requirements, where such compliance is a condition precedent to disbursement, and where DOT does not possess full information to potentially rebut GDC's assertions that it has met such conditions.

5.    Whether the Court should certify a partial final judgment, pursuant to RCFC 54(b).

## STATEMENT OF THE CASE

### I.    Nature of The Case

In its MPSJ, GDC seeks summary judgment on Counts I–VI of its complaint.[2] Specifically, GDC claims breach of contract damages in the amount of $205,275,357.69, a number derived from payments that GDC asserts are owed to it by DOT.  *See* Pl. MPSJ Mem. at

---

[2]  Unless otherwise indicated, we assume GDC's asserted facts to be true, solely for purposes of our motion to dismiss and response to GDC's motion for summary judgment.

10, ECF No. 18-1.  GDC asserts that DOT was obligated to pay this amount in response to reimbursement requests submitted by GDC to DOT, pursuant to a set of agreements relating to the renovation and construction of passenger rail facilities in New Jersey and New York City, referred to as the "Hudson Tunnel Project" (HTP).  *See id.* at 14.  GDC claims in its MPSJ that "GDC is contractually entitled to these funds, and DOT's breach of its contractual obligations has inflicted damages in the amount of the total withheld payments, $205,275,357.69."  *Id.* at 48.

## II.    The Parties' Agreements

As GDC asserts in its complaint, DOT and GDC have entered into four sets of agreements relevant to this case.  Pursuant to the six separate agreements within those four sets, DOT has made the following funding commitments, subject to the terms of the agreements:

(a) $6.88 billion under Full Funding Grant Agreement No. NY-2024-015-00 with the Federal Transit Administration ("FTA") under the Capital Investment Grants Program ("FTA CIG Grant");

(b) $3.79 billion under Grant Agreement No. 69A3652442070FSPNY with the Federal Railroad Administration ("FRA") under the Federal-State Partnership for Intercity Passenger Rail Program ("FRA FSP Grant");

(c) $25 million under Grant Agreement No. NY-2024-014-00 with FTA under the Rebuilding American Infrastructure with Sustainability and Equity Program ("FTA RAISE Grant") [collectively, the "Grant Agreements"]; and

(d) a total of approximately $4.06 billion under three separate loan agreements with DOT under the Railroad Rehabilitation and Improvement Financing Program (collectively, "the RRIF Loans"), which GDC anticipates repaying using funding provided by the (i) Port Authority of New York and New Jersey, (ii) State of New York, and (iii) New Jersey Turnpike Authority, Treasurer of the State of New Jersey, and NJ Transit Corporation.

*See* Compl. ¶ 28, ECF No. 1.  We refer to these six agreements as "the Agreements," and we describe their details as relevant to our arguments below.

3

**III.    DOT's Suspension of Disbursements**

Up to September 30, 2025, DOT had disbursed approximately $393.87 million under the Agreements.  Compl. ¶ 129.  On September 30, 2025, DOT issued a letter to GDC, noting that DOT had "issued an interim final rule (IFR), which removes race- and sex-based presumptions of social and economic disadvantage from its [DBE] program."  Compl. Ex. 12.  DOT furthermore stated that "[i]n conjunction with the issuance of the IFR, the Department is reviewing the projects it funds to ensure nondiscrimination in its financial assistance programs," to ensure that "disbursements for the [HTP] are consistent with the Equal Protection principles of the U.S. Constitution, Federal nondiscrimination requirements under civil rights law, including Title VI of the Civil Rights Act, and Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*."  *Id.*  DOT informed GDC that "[t]hough the review will commence immediately, it will temporarily impact disbursements for the Hudson Tunnel Project."  *Id.*  Specifically, "[p]ending completion of the review, no further disbursements for the Project will be made."  *Id.*

On August 18, 2025, prior to the suspension, GDC had submitted a reimbursement request to DOT, referred to as "Drawdown Request #11."  Compl. Ex. 13-1 at 1.  In the request, GDC sought a drawdown of $5,197,743.30 on the FTA CIG Grant, *id.*, as well as $2,925,651.10 on the RRIF Loans.  *See id.*; *see also id.* at 3-14 (RRIF Loan requisition requests).  The "requested date of disbursement" for these was October 1, 2025.  *See id.* at 1.  GDC also explained to DOT for informational purposes that GDC would separately be seeking a drawdown of $95,740.17 on the FTA RAISE Grant, and $20,778,688.50 under the FRA FSP Grant.  *Id.* at 1-2.

GDC submitted a similar request on September 29, 2025, requesting reimbursement on November 3, 2025, for the FTA CIG Grant and the RRIF Loans.  Compl. Ex. 14-1 at 1.  It made another request on October 30, 2025, requesting reimbursement on December 1, 2025, for the FTA CIG Grant and the RRIF Loans.  Compl. Ex. 18-1 at 1.  GDC made a fourth relevant request on November 25, 2025, requesting reimbursement on January 2, 2026.  Compl. Ex. 22-1 at 1.  And, finally, GDC made a fifth relevant request on December 23, 2025, requesting reimbursement on February 2, 2026.  Compl. Ex. 23-1 at 1.

After DOT sent GDC the letter dated September 30, 2025, GDC and DOT exchanged information regarding GDC's DBE programs.  *See* Compl. Exs. 12, 15-17, and 19-21.   In a letter dated December 1, 2025, DOT stated that it had completed its initial civil rights administrative review of the HTP.  Compl. Ex. 19.  DOT stated that, based on publicly available sources and GDC's prior letters, "[b]y 'presum[ing] contractors qualified to be a disadvantaged business enterprise if [they were] women or black, Hispanic, Asian, Native American owned,' GDC was both in non-compliance with 49 CFR part 26 at the time of the contract and in violation of the U.S. Constitution's Equal Protection principles and Federal civil rights laws."  Compl. Ex. 19 at 1-2 (quoting Compl. Ex. 15 at 1).[3]   DOT continued on to request certain information from GDC, including the following:

> GDC shall identify all existing Project contracts or subcontracts
> that were awarded based on the race, sex, ethnicity, or national
> origin of the contractor and without GDC's or its prime

---

[3]  DOT stated in a footnote that "[b]y 'presum[ing] contractors qualified to be a disadvantaged business enterprise if [they were] women or black, Hispanic, Asian, Native American owned,' GDC was not in compliance with 49 CFR part 26 at the time of the contract. While membership in a specific minority group previously provided a rebuttable presumption of social and economic disadvantage within the certification process, the business still had to undergo a review by a certifying body to ensure it met all other Federal eligibility standards." Compl. Ex. 19 at 2.

contractors' confirmation that the firms in question had proper
DBE certification under the version of 49 CFR part 26 in effect
prior to October 3, 2025.

*See* Compl. Ex. 19 at 1-3.

GDC responded to DOT's December 1 letter on December 8, 2025. *See* Compl. Ex. 20.

In the last of these communications, dated January 8, 2026, GDC provided what it characterized

as proof "that all DBE subcontractors awarded subcontracts related to the Project were certified

as DBEs by a UCP prior to issuance of the IFR." Compl. Ex. 21 at 1.[4] In the January 8, 2026,

letter, GDC – for the first time in the documents attached to GDC's complaint – asserted that the

suspension of disbursements was harming it. *See* Compl. Ex. 21 at 2.

## IV.    This Lawsuit and Post-Filing Events

GDC filed this lawsuit on February 2, 2026. As of that date, DOT had not reimbursed

GDC for the amounts submitted by GDC in the August 2025 through December 2025

reimbursement requests. GDC includes eight counts in its complaint. The first six counts

respectively assert breach of a Grant Agreement or RRIF Loan, based on DOT's alleged failure

to reimburse GDC for sums allegedly due in connection with the HTP. *See* Compl. ¶¶ 184-327.

Count VII seeks damages allegedly caused by any suspension of work on the HTP (which had

not occurred at the time the complaint was filed). *See id.* ¶¶ 328-348. Count VIII asserts a claim

for breach of the implied duty of good faith and fair dealing. *Id.* ¶¶ 349-358.

On the same day it filed its complaint in this action, GDC moved to expedite the Court's

consideration of its MPSJ (which GDC had not yet filed). *See* Pl. Mem. to Expedite, ECF No. 3-

---

[4] A unified certification program (UCP) is an entity that determines whether a concern is
a disadvantaged business enterprise. *See* 49 C.F.R. § 26.81.

1.[5]  GDC filed its MPSJ on February 9, 2026.  In it, GDC asserts breach as to Counts I–VI of its complaint.  Pl. MPSJ at 1.  GDC asserts that each of the Agreements requires DOT to pay reimbursement requests within 30 days, Pl. MPSJ Mem. at 38-39, that DOT did not satisfy requirements for imposing a suspension of funding under the agreements, *id.* at 39-42, and that DOT's actions since September 30 have "compounded its initial breaches."  *Id.* at 42-46.  GDC seeks a damages judgment in the amount of $205,275,358, based on the reimbursements allegedly withheld by DOT.  *See* Pl. MPSJ Mem. at 46-48.  The Court has partly granted GDC's motion to expedite, *see* Order, ECF No. 21, and has stated that it expects to rule from the bench at oral argument, which is to be held on March 12, 2026.

Just after GDC sued for breach of contract in this Court, the State of New Jersey and the State of New York – which created GDC through state legislation – filed suit in the United States District Court for the Southern District of New York (S.D.N.Y.), pursuant to the Administrative Procedure Act (APA).  *See* Complaint, *State of New Jersey v. United States Dep't of Transp.*, No. 1:26-cv-00939 (S.D.N.Y. Feb. 3, 2026) (*New Jersey v. DOT*), ECF No. 1.  The states allege that DOT acted contrary to law, and arbitrarily and capriciously, by suspending payments that the states alleged were due under the Agreements.  *See id.* ¶ 96, ¶¶ 120-141.

On February 6, 2026, the district court granted the states a temporary restraining order (TRO).  TRO, *New Jersey v. DOT*, No. 1:26-cv-00939 (S.D.N.Y. Feb. 6, 2026), ECF No. 45.  The district court denied the Government's motion for a stay of the TRO pending appeal, but it granted an administrative stay to permit the Government to seek a stay pending appeal before the

---

[5]  GDC stated in support of its motion to expedite that the other counts in its complaint, that is for costs caused by suspension (Count VII), and breach of the duty of good faith and fair dealing (Count VIII), "can be resolved on a standard schedule."  *See* Pl. Mem. to Expedite at 10 n.2.

United States Court of Appeals for the Second Circuit.  Order, *New Jersey v. DOT*, No. 1:26-cv-00939 (S.D.N.Y. Feb. 6, 2026), ECF No. 49.  The Second Circuit did not rule on the stay motion prior to the expiration of the administrative stay.  The administrative stay expired at 5:00 P.M. EST on February 12, 2026.[6]

Upon expiration of the administrative stay, DOT began the process of releasing the funds that the states alleged to be due.  In a status report filed in the district court on February 17, 2026, the Government stated that it expected all reimbursements to be paid to GDC no later than February 19, 2026.  Status Report, *New Jersey v. DOT*, No. 1:26-cv-00939 (S.D.N.Y. Feb. 17, 2026), ECF No. 61 (Attachment A).  On February 18, 2026, the Attorney General of New York stated that "New York and New Jersey received the remaining nearly $130 million owed for the Gateway Project, finally unlocking all the funding that had been frozen."  *Attorney General James Provides Update on Gateway Project Funding*, https://ag.ny.gov/press-release/2026/attorney-general-james-provides-update-gateway-project-funding [https://perma.cc/TU8T-C3Y7] (last checked Feb. 19, 2026).  All disbursements have now been completed.  Decl. of Devin Ure, ¶ 5.  Construction on the HTP has restarted. David Matthau, *Work resumes on the Hudson River rail tunnel project, but NJ Transit delays continue*, WHYY (Feb. 22, 2026), https://whyy.org/articles/hudson-river-rail-tunnel-construction-continues-new-york-new-jersey/.

---

[6]  The Government's pending motion to stay the TRO pending appeal at the Second Circuit has been added as an argued case to the substantive motions calendar for March 3, 2026.  Notice, *State of New Jersey v. Dep't of Transp.*, No. 26-282 (2d Cir. Feb. 27, 2026), ECF No. 21.

## ARGUMENT

### I.    Legal Standards

"The mootness of a case is properly the subject of an RCFC 12(b)(1) motion." *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 328 (2012).  Under RCFC 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  Where an intervening circumstance bears on the Court's continuing jurisdiction, the Court is not limited to allegations in the complaint and should consider post-filing evidence.  *See Acetris Health, LLC v. United States*, 949 F.3d 719, 726 (Fed. Cir. 2020).

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1283 (Fed. Cir. 2008).  In considering a motion for summary judgment, the Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### II.    Counts I–VI of The Complaint Should Be Dismissed as Moot

Apart from establishing the Court's jurisdiction under 28 U.S.C. § 1491(a)(1), a plaintiff must also demonstrate that its claims satisfy Article III's case-or-controversy requirement. *BroadReach Healthcare Pty Ltd. v. United States*, 177 Fed. Cl. 371, 375 (2025).  "[A] live dispute must exist at all stages including through appellate review."  *Id.* (citing *eSimplicity, Inc. v. United States*, 122 F.4th 1373, 1376 (Fed. Cir. 2024)).

"When, during the course of litigation, it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should generally be dismissed" as moot. *Chapman L. Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007). "In essence, mootness is the doctrine of standing set in a time frame; that is, the requisite personal interest that must exist at the time of commencement of the litigation (standing) must continue throughout its existence (mootness)." *112 Genesee St., LLC v. United States*, 172 Fed. Cl. 426, 448 (2024) (quoting *Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.*, 915 F.3d 764, 770 (Fed. Cir. 2019)), *aff'd* No. 2025-1373, 2026 WL 290936 (Fed. Cir. Feb. 4, 2026). And a claim is moot when "the court can provide no effective remedy because a party has already 'obtained all the relief that [it] sought.'" *Prairie Band Potawatomi Nation v. Yellen*, 63 F.4th 42, 45 (D.C. Cir. 2023) (cleaned up). The Government bears the burden to show that agency action has rendered the case moot. *See AccelGov, LLC v. United States*, 166 Fed. Cl. 606, 610 (2023).

A claim for damages due to a breach of contract against the United States becomes moot when the United States "pay[s] all of the plaintiff's claimed contract damages" for the claim or when the United States "perform[s] under the contract in full." *Tender Years Learning Corp. v. United States*, 134 Fed. Cl. 336, 343 (2017); *see also Landram v. United States*, 229 Ct. Cl. 855, 856 (1982) ("Plaintiffs' claims for breach of contract damages [are] clearly moot . . . [as] [d]efendant has fully performed the contracts . . .") (internal citation omitted). And courts routinely dismiss breach of contract claims as moot when the defendant has paid sums outside of the litigation for the full amount of a plaintiff's breach claim. *See*, *e.g.*, *Beatley v. Ayers*, 851 F. App'x 332, 335-36 (4th Cir. 2021) (affirming trial court's finding that defendant's "mid-litigation payment . . . mooted that portion of the breach of contract claim"); *Kane v. U-Haul*

*Int'l Inc.*, 218 F. App'x 163, 168–69 (3d Cir. 2007) (affirming dismissal of breach claim as moot because plaintiff received from defendant "the full amount that she could recover"); *Romero v. Allstate*, 2017 WL 895593, at *3 (E.D. Pa. Mar. 7, 2017) ("[T]he breach of contract claim is now moot and should be dismissed because Defendant has tendered the full [amount of the claim]."); *McNeely v. State Farm Lloyds*, 2022 WL 14915590, at *3 (N.D. Tex. Oct. 25, 2022), *aff'd*, 2024 WL 1956146 (5th Cir. May 3, 2024).

Here, the United States has released disbursements totaling $205,275,357.69 to GDC, the full amount that GDC seeks in Counts I–VI of its complaint – the only claims at issue in GDC's MPSJ. *See* Pl. MPSJ Mem. at 46-48. As a result of these payments, GDC has been made whole with respect to Counts I-VI. *See Cmty. Health Choice, Inc. v. United States*, 970 F.3d 1364, 1375 (Fed. Cir. 2020) (holding that "the non-breaching party '[i]s not entitled to be put in a better position by the recovery than if the [breaching party] had fully performed the contract.'") (quoting *Miller v. Robertson*, 266 U.S. 243, 260 (1924) (alterations in original)). As a result, no live controversy exists and GDC's breach claims that are the subject of its MPSJ are moot. *See Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) ("[A] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. This occurs when, among other things, the court can provide no effective remedy because a party has already obtained all the relief that it has sought.") (cleaned up).

In its response to our motion to amend the MPSJ briefing schedule, GDC argued that a defendant tendering money that fully satisfies a breach claim does not render a case moot when the tender is not "voluntary" or comes with a "stipulation or condition." *See* ECF No. 24 at 8 (citing *Jarrett v. United States*, 79 F.4th 675, 678 (6th Cir. 2023)). GDC's argument misunderstands the rule. In *Jarrett*, the court distinguished a tender, or "actual payment," from

an offer, or a "mere proposal or proposition to pay a claim." 79 F.4th at 678. The *Jarrett* court

held that a defendant's conditional offer to pay an amount does *not* render a case moot, but actual

payment does.[7] And actual payment is precisely what occurred here. Ure Decl. ¶ 5. There is no

dispute that GDC now has *actual* possession of the $205,275,357.69 that DOT tendered in

February 2026. GDC provides no evidence showing that the United States has only *offered* to

provide $205,275,357.69 and has withheld giving this money based on some condition or

stipulation.

Jarrett is also instructive because the Sixth Circuit rejected the plaintiff's argument that

mootness did not apply because the government had not admitted liability or agreed to entry of

judgment. To the contrary, the court held, mootness "arises even though the parties 'continue to

dispute the lawfulness of the conduct that precipitated the lawsuit.'" 79 F.4th at 681 (quoting

*Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Thus, the continuing S.D.N.Y. litigation has

no bearing on mootness. The dipositive point instead is that payment has been made.

GDC's citation to *112 Genesee St.* is similarly unavailing. *See* ECF No. 24 at 7. In that

case, this Court held that the lack of funds available in the Restaurant Revitalization Fund

COVID-19 relief program did not moot restauranteurs' claims that they were owed grant money,

---

[7] The language from the *Jarrett* court stating that the defendant "must hand over the full sum without stipulation or condition" cites the Seventh Circuit's decision in *Poteete v. Capital Engineering, Inc.*, 185 F.3d 804, 807 (7th Cir. 1999) (Posner, C.J.). That decision addressed whether the district court erred in awarding a defendant costs after a vexatious litigant rejected the defendant's Rule 68 offer of judgment. The *Poteete* court observed in *dicta* that if the defendant wanted to render the matter moot before the district court the defendant could have "simply writ[ten] [plaintiff] a check" as opposed to making a "condition[al] . . . offer to pay [plaintiff]." *Id.* Here, the United States has not, for example, made a settlement offer in the amount of $205,275,357.69 with conditions attached to it. Rather, the United States has in effect "written a check" for this amount and GDC now has this money. Therefore, the distinction that Judge Posner made in *Poteete* supports our mootness argument.

given the prospect of recovery from the Judgment Fund.  The Court observed that plaintiffs'
claims could potentially become mooted if they "receive[d] grants" or were otherwise
"voluntarily compensated by the defendant."  *Id*.  The Court's statement about what might
hypothetically moot a case is *dicta*, and in any event the term "voluntarily compensated" as used
by the Court should be read to mean that the defendant has paid without condition or stipulation.
Defendant's motivations for paying plaintiff are irrelevant as to mootness.  GDC has received
payments that made it whole with respect to Counts I–VI.  That DOT made these payments in
compliance with the S.D.N.Y.'s TRO does not change the point that GDC received the
$205,275,357.69.

Based on our understanding of GDC's views on mootness, we expect GDC to argue that
the Court should decline to find mootness because DOT at some point in the future might seek to
recoup the $205,275,357.69 it tendered in February 2026.  GDC may argue that even though the
claims contained in Counts I–VI have been resolved, this Court nonetheless should reach the
merits of GDC's breach claims based upon the hypothetical possibility of a clawback.  This
argument misunderstands the scope of this Court's remedial powers and misconstrues the breach
claims that are the subject of the MPSJ.  With GDC having no damages, any proclamation of
breach liability would amount to an advisory opinion, which this Court lacks jurisdiction to
issue.  *See Lowery v. United States*, 167 Fed. Cl. 28, 43 (2023).  This Court also does not possess
jurisdiction to issue a declaratory judgment regarding the existence of a breach of contract in this
case.  *See Pryor v. United States*, 85 Fed. Cl. 97, 103 (2008); *see also United States v. King*, 395
U.S. 1, 5 (1969).[8]  Nor does this Court possess jurisdiction to award nominal damages to merely

---

[8] For certain contract claims brought pursuant to the Contract Disputes Act of 1978
(CDA) equitable relief, including a declaratory judgment is available.  *See* 28 U.S.C.

recognize the existence of a breach where there are no actual damages to be had.  *See Grant v. United States*, 74 U.S. 331, 338 (1868) (holding that "the Court of Claims was not instituted to try such a case [for nominal damages]"); *accord Perry v. United States*, 294 U.S. 330, 355 (1935); *see also Severin v. United States*, 99 Ct. Cl. 435, 443 (1943) ("[T]he futile exercise of suing merely to win a suit was not consented to by the United States when it gave its consent to be sued for its breaches of contract.").  Therefore, following DOT's tendering of $205,275,357.69, there is no longer any cognizable basis for this Court to exercise jurisdiction over Counts I–VI.

Nor could GDC successfully argue that the voluntary-cessation exception to mootness should apply, because GDC's breach claim is not prospective.[9]  Under most formulations of the voluntary-cessation exception, a party claiming that its voluntary compliance has rendered a claim moot must show that (1) there is "no reasonable expectation" that "the alleged violation will recur" and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979); *see Already, LLC*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 190 (2000)).  The exception reflects the concern that a defendant will "stop [his unlawful action] when sued to have the case declared moot, then pick up where he left off,

---

§ 1491(a)(2).  But GDC's breach claim is not pursuant to the CDA and equitable relief is not available to in this case, except possibly as an incident to a money judgment, which is not available here.  *See* 28 U.S.C. § 1491(a)(2).

[9]  Invocation of the voluntary-cessation exception would obviously conflict with any argument that mootness should not apply on the grounds that DOT's payments allegedly were involuntary.  But the Court need not reconcile that conflict because the motivations behind DOT's full payment are irrelevant.

repeating this cycle until he achieves all his unlawful ends." *BroadReach Healthcare*, 177 Fed. Cl. at 377-78 (cleaned up).

Here, the alleged violation cannot recur because the breaching activity of which GDC complains is DOT's non-payment of reimbursement requests submitted between August 2025 and September 2025. *See* Compl. ¶¶ 184-327. The United States' compliance with the S.D.N.Y. TRO ended the nonpayment and resulted in GDC receiving $205,275,357.69. That non-payment cannot recur with respect to those reimbursement requests. Even assuming DOT might suspend payment of future reimbursements, any such action would be entirely distinct from the alleged failure to reimburse the August 2025 through December 2025 requests, which are the exclusive focus of Counts I–VI. If such a suspension were to occur, that might form the basis for a new breach claim, but it would not be a continuation of the alleged failure to pay the August 2025 through December 2025 requests. DOT logically cannot repeat that breach, and so the voluntary-cessation doctrine has no application. Also, this exception would violate this Court's jurisdiction, which, as noted above, does not include declaratory relief. Yet that is exactly what GDC seeks in demanding a judgment precluding a Government future act.

Similarly, GDC cannot successfully invoke the "capable of repetition, yet evading review" exception to mootness. This exception to mootness applies "only in exceptional situations" where "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration," *and* "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016) (cleaned up). Here, the challenged action, DOT's nonpayment of the $205,275,357.69 in reimbursement requests, is entirely in the past and cannot be repeated in light of DOT paying these funds.

We do not argue that this Court's necessary dismissal of Counts I–VI as moot will preclude judicial review of alleged future breaches that GDC might assert in relation to the HTP, based on future conduct by DOT.  But the past withholding of reimbursement for the August 2025 through December 2025 reimbursement requests is now moot.

## III.    Even if Counts I–VI Were Not Moot, GDC's Motion Must Be Denied Due to DOT's Payment by DOT of All Reimbursements Allegedly Withheld

For the reasons set forth above, the Court should dismiss Counts I–VI, because they are moot.  Moreover, even if the Court reaches the merits of GDC's breach claims, which it should not do, the Court must deny GDC's motion for summary judgment, due to DOT's indisputable payment of $205,275,357.69 in reimbursements to GDC after the inception of this lawsuit.  Payment is an affirmative defense, meaning that it limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case.  *Thirteen Inv. Co., Inc. v. Foremost Ins. Co. Grand Rapids Mich.*, 67 F.4th 389, 392 (7th Cir. 2023).

The Government bears the burden of proving such an affirmative defense.  *United Launch Servs., LLC v. United States*, 139 Fed. Cl. 664, 681 (2018) (citing *Energy Nw. v. United States*, 91 Fed. Cl. 531, 554 (2010), *aff'd in part, rev'd in part, vacated in part on other grounds*, 641 F.3d 1300 (Fed. Cir. 2011)).  But "where the plaintiff has moved for summary judgment and the government has asserted an affirmative defense, the plaintiff bears the burden of persuading the court that, with respect to those issues on which [the government] bears the burden of proof at trial, [the government's] evidence is insufficient to establish at least one essential element of [its] affirmative defense."  *United Launch Servs.*, 139 Fed. Cl. at 681 (quoting *McDonald v. United States*, 13 Cl. Ct. 255, 259 (1987) (alterations in original).

Here, the facts supporting the Government's affirmative defense of payment are indisputable: the Government, through DOT, has fully reimbursed GDC for the amounts on

16

which GDC bases its damages in Counts I–VI.  Ure Decl. ¶ 5.  For the reasons set forth in

relation to our mootness arguments, the payments were unconditional because DOT did not, for

example, require GDC to compromise its claims as a condition of being paid.  And if even the

payments had been predicated on stipulations or conditions acceded to by GDC, which they did

not, that is irrelevant to our defense of payment given that it is undisputed that GDC has actually

been paid the $205,275,357.69 in funds.

The Court therefore must deny GDC's motion for partial summary judgment because

GDC cannot refute our evidence of payment.  The Government has paid all amounts forming the

basis for breach in Counts I–VI.

## IV.  DOT's Actions Are Consistent with Its Regulatory Obligation to Ensure That Federal Funds Are Lawfully Spent

Even if the Court declines to dismiss Counts I-IV on mootness grounds, and concludes

that the affirmative defense of payment does not preclude summary judgment for GDC, the

Court nonetheless should deny GDC's motion for partial summary judgment.  To recover for

breach of contract, a plaintiff must establish: "(1) a valid contract between the parties, (2) an

obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused

by the breach." *San Carlos Irrig. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed.

Cir. 1989).  For purposes of this response, we do not challenge GDC's assertion that the

Agreements are contracts between GDC and the United States.  We also do not for purposes of

this motion challenge the quantum of the reimbursement requests on which GDC bases its

damages claim (though we again note that GDC has been made whole with respect to those

amounts).

The Court should not, however, find that DOT's actions amount to breach DOT

undertook a review to determine whether its disbursements for the HTP were consistent with the

Equal Protection principles of the U.S. Constitution and other federal law. Pursuant to this review, DOT investigated whether GDC was in compliance with past and current DBE program requirements, as those requirements are set forth at 49 C.F.R. Part 26. Decl. of Angela Williams, ¶ 3; *see* Compl. Ex. 12. GDC inarguably is obligated to comply with these requirements and other federal law. *See* Compl. Ex. 2 at § 12(e) (FTA CIG Grant Master Agreement requirement that GDC comply with Federal civil rights law including DOT DBE program requirements); Compl. Ex. 3 at Art. 12.2 (FRA FSP Grant requirement that GDC comply, as applicable, with all DBE requirements located at 49 C.F.R. Part 26); *id.* at Art. 20.2 (FRA FSP Grant requirement that GDC "ensure that Federal funding is expended in full accordance with the United States Constitution, Federal law, and statutory and public policy requirements: including but not limited to, those . . . prohibiting discrimination"); Compl. Ex. 4 at Schedule J (FTA RAISE Grant noting establishment of goals for the participation of disadvantaged business enterprises); Compl. Ex. 5 at Art. 15.3 (FTA RAISE Grant requirement that where, as here, the recipient shall expend funds administered by or through a state department of transportation, the recipient shall expend those finds "in compliance with the requirements at 49 C.F.R. part 26; Compl. Exs. 6-8 at § 11 (RRIF loan agreement requirement of compliance with applicable Federal law); *id.* at § 13(q) (loan requirement of representation and warranty that borrower is "in compliance in all material respects with, and has conducted (or caused to be conducted) its business and government functions and the business and operations of the Project in compliance in all material respects with, all applicable laws"); *id.* at § 15(m) (affirmative covenant that "[t]he Borrower shall comply (i) in all material respects with all applicable federal . . . laws . . . to the extent applicable, and (ii) with the terms and conditions of the Federal Grant Agreements").

That GDC must comply with Federal antidiscrimination law as it pertains to DBE requirements is demonstrated by GDC's own efforts to assure DOT that it is in fact compliant. In no instance did GDC object to DOT's requests as improper; nor did GDC contend that responding to DOT's requests would be beyond the scope of GDC's duties under the Agreements.  In response to DOT's announcement of a suspension, GDC asserted that it was complying with all applicable law, rather than that the suspension was inconsistent with the Agreements.  Specifically, GDC's CEO reported to the Administrator of the Federal Transit Administration that "[i]n advance of [DOT's] formal review, I want to share with you changes that were implemented in GDC's contracts to comply with the Executive Orders entered in January 2025 and subsequent FTA guidance to address nondiscrimination obligations."  Compl. Ex. 15 at 1.  GDC moreover noted specific steps assertedly taken to comply with anti-discrimination law and regulations.  *See id.*  Later, GDC asserted that it "endeavors to remain compliant with all applicable laws, regulations, and executive orders as promulgated."  Compl. Ex. 17 at 1.  On December 8, 2026, GDC "certifie[d] that it will fully comply with 49 CFR Part 26 and all applicable federal guidance."  Compl. Ex. 20 at 1 (emphasis removed).

In this context, DOT's suspension of disbursements and review of GDC's DBE policies and practices is consistent with the department's obligation to "manage and administer . . . Federal award[s] in a manner so as to ensure that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations – including provisions protecting free speech, religious liberty, public welfare, and the environment, and those prohibiting discrimination – and the requirements of" 2 C.F.R. Part 200.  2 C.F.R. § 200.300(a).  Furthermore, "[i]n administering awards in accordance with the U.S. Constitution, [DOT] must take account of the heightened constitutional

scrutiny that may apply under the Constitution's Equal Protection guarantee for government action that provides differential treatment based on protected characteristics." *Id.* § 200.300(c). Rather than breach of contract, DOT's actions reflect efforts to ensure non-discrimination in the context of a massive infrastructure project that is being funded by the Federal government, subject to Federal law.

### V.   The Government Seeks Limited Discovery, Pursuant to RCFC 56(d), Relating to GDC's Compliance with applicable Federal law, including DBE Requirements, to Determine the Viability of a Conditions Precedent Defense

To the extent the Court declines to dismiss Counts I–VI and rejects payment as a defense to GDC's breach claim, in the alternative to our assertion of no breach, the Government respectfully requests discovery, pursuant to RCFC 56(d), on the question of whether GDC has complied with a condition precedent to recovery on its breach of contract claims, namely its compliance with Federal nondiscrimination requirements under civil rights law, including DBE requirements.

Rule 56(d) permits the Court to allow discovery in response to a summary judgment motion, as follows:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

RCFC 56(d).  As stated in the advisory committee notes to Rule 56 of the Federal Rules of Civil Procedure – the analogue to RCFC 56 –  "[a]lthough the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be

premature until the nonmovant has had time to file a responsive pleading or other pretrial

proceedings have been had." Fed. R. Civ. P. 56 (Advisory Committee's Notes (2010

Amendments) Subdivision (b)). Similarly, the Federal Circuit has held that summary judgment

is inappropriate prior to adequate discovery:

> "The Supreme Court has made clear that summary judgment is
> inappropriate unless a tribunal permits the parties adequate time
> for discovery." *Dunkin' Donuts of America v. Metallurgical
> Exoproducts Corp.,* 840 F.2d 917, 919 (Fed. Cir. 1988) (citing
> *Celotex Corp. v. Catrett,* [477 U.S. 317, 326] (1986)). Indeed,
> summary judgment should "be refused where the nonmoving party
> has not had the opportunity to discover information that is essential
> to [its] opposition." *Anderson v. Liberty Lobby, Inc.,* [477 U.S.
> 242, 250 n.5] (1986).

*Burnside-Ott Aviation Training Ctr., Inc. v. United States*, 985 F.2d 1574, 1582 (Fed. Cir. 1993);

*see also Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary

judgment is premature unless all parties have 'had a full opportunity to conduct discovery.'"

(quoting *Anderson*, 477 U.S. at 257))). Motions for additional discovery under RCFC 56(d) "are

generally favored and are liberally granted." *Clear Creek Cmty. Servs. Dist. v. United States*,

100 Fed. Cl. 78, 83 (2011).

DOT's suspension of disbursements began with an inquiry regarding the DBE policies

and practices of GDC with respect to GDC's contractors and subcontractors. *See* Compl. Ex. 12.

The agency's DBE policies had recently been revised through the Interim Final Rule, and the

September 30, 2025, letter evidences a concern by DOT regarding whether GDC's DBE policies

and practices were lawful. *See id.*

If GDC failed to comply with Federal antidiscrimination law, or did not comply with the

requirements of DOT's DBE program, then GDC potentially would fail to satisfy a condition

precedent of the Agreements, relieving the United States of any liability for breach of contract.

The RRIF Loans are particularly clear that disbursement of funds is not required if GDC is not compliant with Federal law.  Section 4 of the RRIF Loans states that all disbursements are "subject to the conditions set forth in Section 12(b) (*Conditions Precedent to All Disbursements*)."  Compl. Exs. 6-8 at § 4(a).  Section 12(b)(vii) of the RRIF Loans, in turn, provides that "[n]otwithstanding anything in this Agreement to the contrary, [DOT] shall have no obligation to make any disbursement of loan proceeds to the Borrower" until all "conditions precedent" have been satisfied or waived by the RRIF Lender.  Those required conditions precedent include that the representations and warranties of GDC "shall be true, correct, and complete as of each date on which any disbursement of the RRIF Loan is made."  The Grant Agreements also require compliance with Federal law by GDC, as demonstrated above.  And as stated above, GDC in the course of its communications with DOT never asserted that DOT's inquiries were improper.

Generally, the United States in a breach case of this sort would be entitled to full discovery regarding GDC's compliance with all contractual requirements.  Here, the Court at least should permit discovery on this issue, so the United States can explore the viability of a defense that GDC has not complied with the conditions of the Agreements.  Specifically, the Government would seek information underlying the statements that GDC made in its letters to DOT dated October 2, 2025 (Compl. Ex. 15), October 21, 2025 (Compl. Ex. 17), December 8, 2025 (Compl. Ex. 20), and January 8, 2026 (Compl. Ex. 21).

The Court should allow the Government to complete this discovery before ruling on GDC's MPSJ, as GDC's letters were not accompanied by supporting evidence, other than an attachment to the January 8, 2026, letter.  The Government therefore lacks full and current information regarding GDC's compliance with the conditions of the Agreements applicable to

22

the DBE program, beyond publicly available information, the statements in GDC's letters, and

the accompanying attachment to the January 8, 2026, letter.  *See* Williams Decl. ¶ 10.  Discovery

should be ordered here, to allow the Government to explore this defense.

## VI.    The Court Should Decline to Certify Final Judgment Pursuant to RCFC 54(b)

We have demonstrated above that GDC's MPSJ should be denied, to the extent the Court

declines to dismiss Counts I–VI.  But even if the Court grants summary judgment, it should

decline to enter a partial final judgment pursuant to RCFC 54(b).  This Court may issue a

certification leading to a partial final judgment only if the Court "expressly determines that there

is no just reason for delay."  RCFC 54(b).  "[E]ntry of final judgment under Rule 54(b) is not to

be done lightly, particularly when the action remains pending as to all parties."  *Brunswick Corp.*

*v. Sheridan*, 582 F.2d 175, 183 (2d Cir. 1978).  This principle reflects a "policy against

piecemeal appeals of intertwined claims."  *Id.* at 185; *see Intergraph Corp. v. Intel Corp.*,

253 F.3d 695, 699 (Fed. Cir. 2001).

GDC asserts that there is no just reason for delay based on the magnitude of its asserted

damages and the unavailability of pre- and post-judgment interest.  *See* Pl. MPSJ Mem. at 49

(citing *Loc. Initiative Health Auth. for L.A. Cnty. v. United States*, 145 Fed. Cl. 746, 751 (2019).

Arguably, the unavailability of interest is simply a function of the limited scope of the

Government's waiver of sovereign immunity in cases such as this, and Congress's choice in that

regard cannot support a determination that there is no just cause for delay.  But more

importantly, GDC's assertions regarding the magnitude of its monetary damages no longer has

force here, because GDC has no damages.  The Court should not rule in GDC's favor – because

it is only empowered to issue a monetary judgment and there is no monetary judgment that it

could issue –  much less should the Court certify a partial final judgment.

## CONCLUSION

For these reasons, the Court should dismiss as moot Counts I–VI of GDC's complaint. To the extent it declines to do so, the Court should deny GDC's motion for partial summary judgment. Alternatively, the Court should hold GDC's MPSJ in abeyance to permit the Government to conduct discovery regarding GDC's compliance with Federal law, including DBE requirements. Finally, the Court should in any event deny GDC's request for entry of partial final judgment pursuant to RCFC 54(b).

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Geoffrey M. Long
GEOFFREY M. LONG
Assistant Director
BRENDAN JORDAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington D.C.  20044
Telephone: (202) 307-0159
E-Mail: Geoffrey.M.Long@usdoj.gov

February 27, 2026                    Attorneys for Defendant

24