# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GATEWAY DEVELOPMENT
COMMISSION,

        Plaintiff,

v.

UNITED STATES,

        Defendant.

Case No. 26-176C

## DECLARATION OF ANGELA WILLIAMS

I, Angela Williams, do hereby declare and state as follows:

1.    I am the Associate Director for the Complaints Adjudication and Program Evaluation Division in the Departmental Office of Civil Rights ("DOCR") within the United States Department of Transportation ("DOT"). Between June and December of 2025, I served as Acting Deputy Director of DOCR. In this role, I have communicated, on behalf of DOT, with the Gateway Development Commission ("GDC") about the matters discussed in this declaration. I submit this declaration based on my personal knowledge and information available to me in my official capacity.

2.    On September 30, 2025, DOT notified the GDC by letter that DOT was reviewing the projects it funds to ensure nondiscrimination in its financial assistance programs, and that this review applied to GDC's Hudson Tunnel Project (the "Project"). A copy of the letter is included as Exhibit 12.[1] DOT stated the review would ensure that disbursements for the Project are

---

[1] "Exhibit __" refers to exhibits to Plaintiff's Complaint, which were transmitted to the Court via flash drive (ECF Nos. 14, 14-1).

consistent with the U.S. Constitution, Federal civil rights law, and Executive Order 14173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity.* DOT further informed GDC that it would temporarily pause reimbursements for the project during this administrative review.

3. DOT noted that it was conducting the review in conjunction with its issuance the same day of an Interim Final Rule ("IFR") governing the Disadvantaged Business Enterprise ("DBE") program. Under that Congressionally created program, recipients of highway and transit funding must set goals for participation by DBEs, which are small businesses owned and controlled by "socially and economically disadvantaged" individuals. *See* Infrastructure Investment and Jobs Act, § 11101(e), Pub. L. No. 117-58 (2021). Although the statute requires that women and members of certain racial groups be presumed to be "disadvantaged," *see id.* § 11101(e)(2)(B) (cross-referencing 15 U.S.C. § 637(d)(3) and 13 CFR 124.103(b)(1)), the IFR revised DOT's DBE regulations to remove such race- and sex-based presumptions after finding them unconstitutional, *see* 90 Fed. Reg. 47969 (Oct. 3, 2025). The IFR requires every DBE owner to make an individualized showing of disadvantage, regardless of the owner's race or sex. In addition, the IFR requires each State to reevaluate whether each existing DBE meets the new certification standards, and it prohibits recipients from setting DBE contract goals until that reevaluation is complete.

4. The pause on reimbursements for the Project affected the following funding agreements:

    a. Full Funding Grant Agreement No. NY-2024-015-00 with the Federal Transit Administration (FTA) under the Capital Investment Grants Program in the amount of $6.88 billion;

  b. Grant Agreement No. 69A36524420700FSPNY with the Federal Railroad Administration under the Federal-State Partnership for Intercity Passenger Rail Program in the amount of $3.79 billion

  c. Grant Agreement No. NY-2024-014-00 with FTA under the Rebuilding American Infrastructure with Sustainability and Equity Program in the amount of $25 million; and

  d. Three separate loan agreements with the Department under the Railroad Rehabilitation and Improvement Financing Program in the amount of approximately $4.06 billion.

Copies of the agreements, and applicable terms and conditions, governing these awards are included as, respectively, Exhibits 1-8.

  5. On October 2, 2025, GDC responded to DOT by letter, a copy of which is included as Exhibit 15. GDC stated, among other things, that prior to 2025, its contracts "presumed contractors qualified to be a [DBE] if it was women or black, Hispanic, Asian, [or] Native American owned."

  6. DOT requested additional information from GDC on October 7, 2025, and GDC responded by letter dated October 21, 2025. Copies of DOT's request and GDC's letter are included as, respectively, Exhibits 16 and 17.

  7. On December 1, 2025, DOT sent a letter to GDC, a copy of which is included as Exhibit 19. DOT noted that GDC had not provided information responsive to much of what it had requested, and that DOT obtained supplemental information from publicly available sources. DOT stated that by presuming contractors to be qualified DBEs if they were owned by women or members of certain racial groups, without making any apparent effort to ensure that those

contractors met other DBE requirements, GDC violated the DBE regulations in place at the time, the equal protection principles of the U.S. Constitution, and Federal civil rights laws.

    8.    DOT informed GDC that although GDC's conduct raised "grave concerns," DOT intended to resume reimbursements if GDC committed to taking two sets of actions:

    a.    First, GDC must identify all Project contracts and subcontracts awarded based on the contractor's race or sex without GDC or its prime contractor confirming that the contractor was properly certified as a DBE under the pre-IFR regulations. GDC must terminate any identified contracts, and—if necessary for the Project—re-let the contracts in compliance with the IFR.

    b.    Second, after the conclusion of the DBE reevaluation process mandated by the IFR, GDC must terminate any contracts on which work is being done by DBEs who are not recertified under the new requirements, and—if necessary for the Project—re-let those contracts in compliance with the IFR.

    9.    GDC responded on December 8, 2025, and again on January 8, 2026. Copies of the responses are included as, respectively, Exhibits 20 and 21.

    10.    DOT lacks any current factual information regarding GDC's compliance with the conditions of the Agreements applicable to the DBE program, beyond publicly available information, the statements in GDC's letters, and the accompanying attachment to the January 8, 2026, letter.

    11.    DOT is evaluating GDC's submissions and has not made a final determination as to whether GDC has fulfilled the commitments outlined in DOT's December 1, 2025, letter or a final determination as to whether resuming payments would be consistent with the Constitution

and Federal law. If DOT concludes that there are additional issues that need to be addressed, it will notify GDC so that those issues can be resolved.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 27th day of February 2026.

Date: 2026.02.27 13:26:49 -05'00'

Angela Williams
Associate Director
Departmental Office of Civil Rights
U.S. Department of Transportation