**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

GATEWAY DEVELOPMENT
COMMISSION,

        Plaintiff,

        v.

THE UNITED STATES,

        Defendant.

No. 26-176C
Hon. Richard A. Hertling

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PARTIAL MOTION TO
DISMISS AND REPLY IN FURTHER SUPPORT OF ITS MOTION FOR
<u>PARTIAL SUMMARY JUDGMENT (COUNTS I – VI)</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

QUESTIONS PRESENTED...................................................................................... 3

SUPPLEMENTAL STATEMENT OF THE CASE.................................................. 4

ARGUMENT............................................................................................................ 7

I.      THIS COURT HAS JURISDICTION TO RESOLVE COUNTS I – VI. .......................... 7

    A.  Counts I – VI Are Not Moot. ................................................................... 7

    B.  This Court Has Jurisdiction to Resolve Counts I – VI Under 28 U.S.C. § 1491(a). ........ 11

II.     THE GOVERNMENT HAS NOT MET ITS BURDEN TO ESTABLISH THE
        AFFIRMATIVE DEFENSE OF PAYMENT.................................................... 14

III.    THE GOVERNMENT BREACHED THE AGREEMENTS.......................................... 15

IV.     THE GOVERNMENT HAS NOT MET ITS BURDEN TO POSTPONE SUMMARY
        JUDGMENT TO TAKE DISCOVERY UNDER RULE 56(d). ...................................... 18

V.      THE COURT SHOULD DIRECT ENTRY OF FINAL JUDGMENT FOR GDC ON
        COUNTS I – VI IN THE AMOUNT OF $205,275,358. ................................................. 20

CONCLUSION......................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*112 Genesee St., LLC v. United States*,
    172 Fed. Cl. 426 (2024) .................................................................................8

*Am. Sav. Bank, F.A. v. United States*,
    83 Fed. Cl. 555 (2008) .................................................................21, 22, 23

*Aspen Consulting, LLC v. Sec'y of Army*,
    25 F.4th 1012 (Fed. Cir. 2022) .................................................................14

*Bank of Lincolnwood v. Fed. Leasing, Inc.*,
    622 F.2d 944 (7th Cir. 1980) .....................................................................22

*Brunswick Corp. v. Sheridan*,
    582 F.2d 175 (2d Cir. 1978).......................................................................21

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016)....................................................................................9

*Cent. Pines Land Co. v. United States*,
    697 F.3d 1360 (Fed. Cir. 2012)..................................................................12

*Chesapeake & Potomac Tel. Co. of Va. v. United States*,
    654 F.2d 711 (Ct. Cl. 1981) .................................................................14, 15

*Conn. Yankee Atomic Power Co. v. United States*,
    142 Fed. Cl. 87 (2019) .........................................................................21, 23

*CW Gov't Travel, Inc. v. United States*,
    46 Fed. Cl. 554 (2000) ............................................................................6, 7

*The Emily Souder*,
    84 U.S. 666 (1873).....................................................................................15

*Engage Learning, Inc. v. Salazar*,
    660 F.3d 1346 (Fed. Cir. 2011)............................................................12, 13

*F. Alderete Gen. Contractors, Inc. v. United States*,
    715 F.2d 1476 (Fed. Cir. 1983)..................................................................12

*FBI v. Fikre*,
    601 U.S. 234 (2024)....................................................................................7

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*,
    551 U.S. 449 (2007)..................................................................................7, 8

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Ford Motor Co. v. United States,*
  688 F.3d 1319 (Fed. Cir. 2012) ..................................................................................13

*Intergraph Corp. v. Intel Corp.,*
  253 F.3d 695 (Fed. Cir. 2001) .................................................................................21, 22

*Jan's Helicopter Serv., Inc. v. FAA.,*
  525 F.3d 1299 (Fed. Cir. 2008) ..................................................................................12

*Jarrett v. United States,*
  79 F.4th 675 (6th Cir. 2023) ...............................................................................9, 10, 11

*Keebler Co. v. Murray Bakery Prods.,*
  866 F.2d 1386 (Fed. Cir. 1989) ................................................................................18, 20

*Knox v. Serv. Emps. Int'l Union, Local 1000,*
  567 U.S. 298 (2012) ..................................................................................................8

*Little River Lumber Co. v. United States,*
  21 Cl. Ct. 527 (1990) ...............................................................................................21

*Loc. Initiative Health Auth. for L.A. Cnty. v. United States,*
  145 Fed. Cl. 746 (2019) ........................................................................................20, 21, 22

*Mission Prod. Holdings, Inc. v. Tempnology, LLC,*
  587 U.S. 370 (2019) .................................................................................................11

*Padilla v. United States,*
  58 Fed. Cl. 585 (2003) .........................................................................................18, 19, 20

*Rothe Dev. Corp. v. Dep't of Def.,*
  545 F.3d 1023 (Fed. Cir. 2008) ...................................................................................9

*RQ Squared, LLC v. United States,*
  129 Fed. Cl. 742 (2017) ..............................................................................................18

*Shipping Corp. of India v. Sun Oil Co.,*
  569 F. Supp. 1248 (E.D. Pa. 1983) ..............................................................................14

*Tender Years Learning Corp. v. United States,*
  134 Fed. Cl. 336 (2017) ...............................................................................................8

*Thirteen Inv. Co. v. Foremost Ins. Co. Grand Rapids Mich.,*
  67 F.4th 389 (7th Cir. 2023) ....................................................................................14, 15

iii

*United States v. Isthmian Steamship Co.*,
359 U.S. 314 (1959)................................................................................................15

**Rules & Regulations**

2 C.F.R. § 200.399 ................................................................................................16

R.C.F.C. 54 .................................................................................................. *passim*

R.C.F.C. 56 .................................................................................................. *passim*

**Other Authorities**

Dkt. Entry Text: Oral Arg. on Mot. for Stay Pending Appeal, *New Jersey v. Dep't of Transp.*,
No. 26-00282 (2d Cir. Mar. 3, 2026), Dkt. No. 24 ....................................................6

Oral Arg. Audio, *New Jersey*, No. 26-00282 (2d Cir. Mar. 3, 2026),
https://ww3.ca2.uscourts.gov/decisions/isysquery/fa2a20e2-b97b-481e-9f71-f25a7ad4bc81/2/doc/26-282%20mtn.mp3.............................................................6, 22

Order, *New Jersey*, No. 26-cv-939 (S.D.N.Y. Mar. 2, 2026), Dkt. No. 64 .....................6

Robert G. Bone, *"To Encourage Settlement": Rule 68, Offers of Judgment, and the History of the Federal Rules of Civil Procedure*,
102 Nw. U. L. Rev. 1561 (2008) ................................................................................9

U.S. Dep't of Justice, Civil Resource Manual § 47 (Sep. 2013),
https://perma.cc/W49H-7AN6..................................................................................12

## PRELIMINARY STATEMENT

The government all but agrees that DOT[1] breached its contracts with GDC. The government does not dispute that, under the HTP Grant and Loan Agreements, DOT was required to make a final noncompliance determination *before* halting GDC's reimbursement requests, nor does it dispute that DOT had to provide GDC advance notice *and* an opportunity to cure any such determination. The government also offers nothing to rebut the straightforward facts: DOT failed to make a determination of noncompliance, never provided GDC with notice or an opportunity to cure, and nonetheless suspended payments—wrongfully withholding $205,275,357.69 in critical construction funds for the HTP. DOT's failure to dispute these contract terms or rebut these straightforward facts leads inexorably to the conclusion that DOT has breached the HTP Grant and Loan Agreements.

Instead of addressing this clear breach of its contractual obligations, the government insists that the Court should disregard that breach simply because, after this suit was filed, DOT transferred the $205,275,357.69 to GDC pursuant to a TRO entered in a different case, all the while challenging the TRO and preserving DOT's ability to claw back the money if the TRO is lifted. The government insists that this "all strings attached" transfer moots the case or otherwise prevents this Court from granting summary judgment to GDC, even though DOT has repeatedly made clear—including in response to requests from this Court—that it is unwilling to do anything to assure GDC that it can keep the money it is owed. And the Government further asserts that this Court should at least delay any summary judgment determination so the government can embark

---

[1] Unless otherwise noted, capitalized terms not defined herein have the definition ascribed to them in the Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Counts I – VI), Dkt. No. 18 ("GDC's Brief" or "GDC Br.") or in Defendant's Partial Motion to Dismiss, Response to Plaintiff's Motion for Partial Summary Judgment, and Motion for Discovery Pursuant to Rule 56(d), Dkt. No. 28 ("Government's Brief" or "Gov't Br.").

on discovery in the hope of uncovering some basis—never previously identified—to justify DOT's blatant violation of the Agreements.  In other words, the government suggests that its desire to conduct a fishing expedition based on unfounded speculation should be enough to warrant delay and discovery.

All of this is just as wrong as it sounds.  The government cannot moot a damages action by making a payment without acknowledging the plaintiff's entitlement to the funds.  If that were the rule, the government could manipulate jurisdiction at will—paying under protest, securing a dismissal on mootness grounds, and then clawing back the money afterward.

Nor is the government correct that GDC got the benefit of its bargain under the Agreements simply because DOT transferred the funds.  Those Agreements guarantee GDC the right to receive specific funding so long as GDC fulfills its contractual obligations; they do *not* create a system in which GDC merely holds money at the government's pleasure until DOT decides whether to reclaim it.  Infrastructure projects like the HTP could not be built if federal grantees and borrowers lacked assurance that the government would allow them to obtain and retain the funds necessary to complete construction.

The government fares no better in arguing that its involuntary, conditional payment deprives this Court of Tucker Act jurisdiction, establishes the affirmative defense of payment, or makes GDC's claims unfit for partial final judgment.  Nothing in the Tucker Act suggests that a belated payment under protest and with conditions can deprive this Court of jurisdiction or preclude a plaintiff from prevailing on the merits.  And because DOT still refuses to acknowledge that GDC is entitled to the funds free and clear, the urgency supporting entry of partial final judgment remains fully intact; a ruling from this Court will (one hopes) provide badly needed certainty for the project going forward.

As for DOT's half-hearted request for discovery, no principle of contract law or any other doctrine allows a breaching party to avoid judgment by requesting time to search for some after-the-fact-justification for its own breach.

The Court should therefore deny the government's partial motion to dismiss, grant summary judgment for GDC on Counts I – VI, and enter final judgment for GDC on Counts I – VI in the amount of $205,275,357.69.

## QUESTIONS PRESENTED

1. Did DOT's payment of $205,275,357.69, taken together with DOT's refusal to state that it would not try to take that money back in the future, nonetheless either (A) moot or (B) divest this Court of its Tucker Act jurisdiction over Counts I – VI, which seek the $205,275,357.69 free and clear?

2. Has the government established that DOT's involuntary, conditional payment of $205,275,357.69 gives rise to the affirmative defense of payment, where the Agreements require DOT to pay GDC those funds outright?

3. Did DOT breach the Agreements when it suspended contractually required payments without making a final determination that GDC was not in compliance with the Agreements, furnishing GDC advance notice of any such determination, and providing GDC an opportunity to cure any such noncompliance?

4. Has the government met its burden under RCFC 56(d) to provide an affidavit specifying currently unavailable evidence it hopes to obtain that will disclose facts precluding summary judgment to GDC?

5. Should the Court enter partial final judgment on Counts I – VI under RCFC 54(b)?

### SUPPLEMENTAL STATEMENT OF THE CASE

On February 2, 2026, GDC commenced this action for breach of contract against DOT based on DOT's failure to satisfy its funding obligations under the HTP Grant and Loan Agreements. *See* Compl., Dkt. No. 1. On February 9, 2026, GDC filed a motion for partial summary judgment and partial final judgment ("MPSJ"), specifically on Counts I – VI of its Complaint. *See* GDC Br., Dkt. No. 18.

GDC's Brief in support of its motion pointed to all facts material to resolving Counts I – VI. In brief, those facts are as follows: (1) DOT and GDC entered into the Agreements, which are binding contracts; (2) DOT was required to pay GDC within 30 days of GDC requesting payment under the Agreements; (3) DOT stopped paying GDC without first making the contractually required final determination of noncompliance or providing the contractually required post-determination notice and opportunity to cure noncompliance; and (4) DOT owed GDC $205,275,357.69 outright. GDC Br. at 5-21. The government does not dispute any of these facts. *See* Gov't Br. at 2-6.

DOT's breach forced GDC to suspend work on the HTP on February 6, 2026, which inflicted severe harms on GDC, the workers who lost their livelihoods, the States who supported the HTP, and the public that would benefit from it. GDC Br. at 23-25. Because of these stakes, GDC moved this Court to expedite ruling on GDC's MPSJ; after full briefing and hearing, the Court partially granted the motion to expedite and ordered the government to respond to GDC's MPSJ by February 27, 2026. *See* Scheduling Order, Dkt. No. 21.

On February 20, 2026, the government moved to amend the MPSJ briefing schedule ("Motion to Amend" or "Mot. Amend") to have an additional month and a half to file its response, on the basis that DOT had complied with a TRO issued by the United States District Court for the

4

Southern District of New York in an APA action ("APA Action") filed by New York and New Jersey challenging DOT's funding suspension. Mot. Amend at 3, Dkt. No. 22 (discussing developments in *New Jersey v. U.S. Dep't of Transp.*, No. 26-cv-939 (S.D.N.Y.)). GDC filed a response to that motion ("GDC Resp. to Mot. Amend") on February 23, 2026. GDC Resp. to Mot. Amend., Dkt. No. 24.

In its response, GDC explained that, in compliance with the TRO, DOT had disbursed the $205,275,357.69 in past due funds, as well as $30,477,545.41 of the $49,778,756.92 that GDC had requested through its January 30, 2026 reimbursement submission, for which payments were due on March 2, 2026. *Id.* at 4-5. But GDC explained that the urgency behind its MPSJ had not dissipated, "[b]ecause DOT is actively appealing and seeking a stay of the TRO, and because the agency has refused to provide any assurance that it will allow GDC to keep the more than $205 million it is owed in damages if the TRO is stayed." *Id.* at 5-6. And GDC further explained that DOT had refused GDC's repeated requests for DOT to confirm that it would not attempt to claw back the money it had paid GDC pursuant to the TRO. *Id.* at 5-7.

This Court held a hearing on the government's Motion to Amend on February 24, 2026. At the outset, the Court explained that it would grant the government's motion if DOT was "willing to make a commitment that it will not make any effort to recoup the 205 million and change during the pendency of [GDC's] summary judgment motion." Feb. 24, 2026 Hr'g Tr. at 8, Dkt. No. 30. The Court gave the government numerous opportunities to make that commitment. *See id.* at 11-12, 22-23, 30-32, 40-41, 43, 48, 51-52, 54. It was unwilling to do so. In fact, the government suggested that DOT might "cut back on future reimbursement requests in an attempt to recoup the 205 million"—that is, breach GDC's contracts again in the future. *Id.* at 24. After the hearing, the government notified the Court that it intended to adhere to the expedited schedule originally

set, *see* Status Report, Dkt. No. 25, and the Court denied the Motion to Amend as moot, *see* Order, Dkt. No. 26.

On March 3, 2026—four days after DOT filed its response to the instant motion for partial summary judgment in this case—a motions panel of the U.S. Court of Appeals for the Second Circuit heard oral argument on DOT's emergency motion to stay the District Court's TRO in the APA Action. *See* Dkt. Entry Text: Oral Arg. on Mot. for Stay Pending Appeal, *New Jersey v. Dep't of Transp.*, No. 26-00282 (2d Cir. Mar. 3, 2026), Dkt. No. 24. At argument, the panel asked DOT's counsel if counsel was "saying [DOT] won't try to recoup the money from GDC," to which counsel responded, "I can't make the representation that the Department of Transportation will forgo any possibility that it could . . . recoup the money." Oral Arg. Audio at 10:27-11:00, *New Jersey*, No. 26-00282 (2d Cir. Mar. 3, 2026).[2] In response, Judge Raggi observed that this refusal may be "a problem" for the government's argument that GDC's breach of contract claims in this case are moot. *Id.* at 10:59-11:04.

The Second Circuit panel has yet to rule on the DOT's motion. In the meantime, the District Court has scheduled a hearing on New York and New Jersey's motion for a preliminary injunction for April 16, 2026, *see* Order, *New Jersey*, No. 26-cv-939 (S.D.N.Y. Mar. 2, 2026), Dkt. No. 64, marking a definite end date for the TRO one way or another.

## **LEGAL STANDARD**

RCFC 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.[3] When a defendant makes a " 'facial' challenge" to jurisdiction, or a challenge to the sufficiency of a

---

[2] Available for download at https://ww3.ca2.uscourts.gov/decisions/isysquery/fa2a20e2-b97b-481e-9f71-f25a7ad4bc81/2/doc/26-282%20mtn.mp3.

[3] GDC's Brief set forth the legal standards governing motions for summary judgment under RCFC 56(a) and requests for entry of partial final judgment under RCFC 54(b), so GDC does not restate them here. *See* GDC Br. at 25-26.

complaint's jurisdictional allegations, "the court must assume that the facts alleged in the complaint are true and correct." *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 556 (2000). But when a defendant makes a "'factual' challenge" to jurisdiction, or a challenge irrespective of the complaint's allegations, "the court may look beyond the complaint to determine jurisdictional facts." *Id.*

## ARGUMENT

**I.     THIS COURT HAS JURISDICTION TO RESOLVE COUNTS I – VI.**

The Court should deny the government's partial motion to dismiss. The government argues that its post-filing actions have deprived this Court of both Article III and statutory subject matter jurisdiction over Counts I – VI. Gov't Br. at 9-16. Specifically, the government contends that DOT's payment of $205,275,357.69 without assurance that it will allow GDC to keep that money both (A) renders Counts I – VI moot and (B) divests this Court of jurisdiction under the Tucker Act to enter a money judgment for GDC on Counts I – VI. *Id.* The government is wrong on both accounts.

**A.  Counts I – VI Are Not Moot.**

1.     A claim is moot only where "a complaining party manages to secure outside of litigation *all the relief* he might have won in it." *FBI v. Fikre*, 601 U.S. 234, 240 (2024) (emphasis added). Moreover, twin exceptions to mootness for "voluntary cessation" and actions that are "capable of repetition yet evading review" ensure that a court does not lose jurisdiction merely because a defendant has done something it may quickly undo or because a harm has ended where it may soon recur. *See id.* at 241 ("Were the [voluntary cessation] rule more forgiving, a defendant might suspend its challenged conduct after being sued, win dismissal, and later pick up where it left off."); *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 463-64 (2007) ("capable of repetition, yet evading review" exception applies where "there exists a reasonable

expectation that the same controversy involving the same party will recur" (internal quotation marks omitted)).   And the Supreme Court has instructed that courts should look with "a critical eye" on defendants' "maneuvers designed to insulate" their conduct from judicial review.  *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).

These fundamental principles compel rejection of the government's assertion that GDC's contract claims are moot.  As this Court has previously recognized, claims for "[c]ontract damages . . . are not easily mooted" and remain live unless the government gives the plaintiff the complete relief that it seeks—"*all* . . . claimed contract damages or perform[ance] under the contract *in full*." *Tender Years Learning Corp. v. United States*, 134 Fed. Cl. 336, 343 (2017) (emphases added); *see also, e.g.*, *112 Genesee St., LLC v. United States*, 172 Fed. Cl. 426, 450 (2024) (because a damages award would not be subject to possible return requirements or recission, "[t]he possibility of a damages award . . . is not moot and could provide the plaintiffs with the relief they seek").

Here, the government has not come close.  In Counts I – VI, GDC has explained how the government is contractually obligated to provide GDC with $205,275,357.69 *free and clear*. Compl. ¶¶ 184-327, Prayer for Relief.  Instead of fulfilling that obligation, DOT has sent GDC $205,275,357.69 with a clawback caveat that the government has repeatedly declined to disclaim, even temporarily, and even in response to suggestions from this Court.  *See* Feb. 24, 2026 Hr'g Tr. at 8, 11-12, 22-23, 30-32, 40-41, 43, 48, 51-52, 54.  As a result, GDC does not have the unconditional payment to which it is entitled.  Unless and until the government grants GDC *that* relief, GDC has *not* "been made whole with respect to Counts I-VI." *Contra* Gov't Br. at 11.  Only free-and-clear payment can qualify as "all of" GDC's "claimed contract damages" or "full" "perform[ance]" under the Agreements. *Tender Years Learning*, 134 Fed. Cl. at 343.

A long line of cases involving mootness and money damages underscores this point.  The Federal Circuit has squarely held that although a damages tender may moot a claim, "an *actual* tender is required for mootness."  *Rothe Dev. Corp. v. Dep't of Def.*, 545 F.3d 1023, 1032 (Fed. Cir. 2008).  And the Sixth Circuit has explained that, for an actual tender to occur, the defendant "must hand over the full sum *without stipulation or condition.*"  *Jarrett v. United States*, 79 F.4th 675, 678 (6th Cir. 2023) (Sutton, C.J.) (emphasis added).

In other words, an "actual tender" occurs only when there is a full, *irrevocable* payment. That is what an actual tender has always meant in the common law.  *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 170 (2016) (Thomas, J., concurring in the judgment) (explaining "a 'tender' " was "an offer to pay the entire claim before a suit was filed, accompanied by 'actually producing' the sum 'at the time of tender' in an '*unconditional*' manner" (emphasis added) (brackets and quotation omitted)).  That is what it has meant with respect to statutory tenders since at least the nineteenth century.  *See* Robert G. Bone, *"To Encourage Settlement": Rule 68, Offers of Judgment, and the History of the Federal Rules of Civil Procedure*, 102 Nw. U. L. Rev. 1561, 1585-86 (2008) (explaining how, whether the plaintiff accepted the money or the defendant deposited the money with the court, "the defendant bid[] his money an eternal farewell" (quotation omitted)).  And that is what it means now.  *See Jarrett*, 79 F.4th at 682 (recognizing that a damages settlement does not moot a claim where it "still runs the risk of leaving the plaintiff emptyhanded").

The government—despite numerous chances to do so—has not made an "unconditional" payment or "bid its" $205,275,357.69 "an eternal farewell," or ensured that GDC will not be left "emptyhanded."   To the contrary, DOT has repeatedly refused to concede that GDC can keep the $205,275,357.69, even for the brief period when these proceedings are pending.  Accordingly, Counts I – VI are not moot.

9

2.      The government asserts that Chief Judge Sutton's decision on mootness in *Jarrett* is not relevant because the *Jarrett* court reached a holding only on "conditional offer[s]," not conditional payments.  Gov't Br. at 12 & n.7.  *But see Jarrett*, 79 F.4th at 681 ("a full tender of payment, unaccompanied by any conditions"); *id.* at 682 ("full and unconditional payment"); *id.* ("full, unconditional payment").  That is incorrect because *Jarrett* squarely addressed conditional payments when it considered the plaintiff's argument that his damages claim was still live despite the IRS mailing him a check because "the IRS could bring a civil lawsuit against him to recover the check as erroneously refunded."  79 F.4th at 682.  Far from rejecting the assertion that a potential clawback could moot a damages claim, the court explained that the plaintiff's argument failed because "the government ha[d] *unequivocally stated* that it cannot (and will not)" attempt to claw back the funds, and its statement meant that the government would be estopped from any effort to reclaim the refund in the future.  *Id.* (emphasis added) (internal quotation marks omitted).

An unequivocal and binding statement disclaiming recoupment is exactly what is missing here.  Nor does it matter that *Jarrett* arose from a decision of a district court rather than the CFC.  While district courts typically have broader power to issue declaratory and injunctive relief that might affect the application of mootness principles, *Jarrett* involved a "tax refund lawsuit" in which the court was statutorily barred from issuing a "declaratory judgment" or "a permanent injunction."  *Id.* at 683.  Indeed, *Jarrett* rejected the plaintiff's assertion that his request for "a judgment and a permanent injunction" might save his suit from mootness, observing that those "non-monetary requests for relief are inconsistent with these [statutory] limitations."  *Id.*  In other words, the district court's authority in *Jarrett* was nearly identical to this Court's own statutory jurisdiction here, making *Jarrett*'s discussion of the need for an "unequivocal[] state[ment]" disclaiming clawback directly relevant.  *Id.* at 682 (internal quotation marks omitted).

10

The government also fails in its effort to find support in other mootness cases because not one of the cases it cites involves a conditional payment to a plaintiff that the defendant claimed the right to claw back. *See* Gov't Br. at 10-11. This Court should not be the first to hold that such "strings-attached" payments can deprive a court of jurisdiction. When a defendant gives the plaintiff the amount of money requested but reserves the right to try to take the money back later, that is simply not "a tender [that] gives the plaintiff all the relief she could receive" if she litigated her claim to a winning final judgment. *Jarrett*, 79 F.4th at 678.

The government also briefly declares that "the continuing S.D.N.Y. litigation has no bearing on mootness." Gov't Br. at 12. As far as Counts I – VI go, perhaps the government would have a colorable argument if DOT had unequivocally agreed to permit GDC to keep the $205,275,357.69, but until DOT does, that litigation is highly relevant. DOT paid GDC only after the district court entered a TRO, and DOT has refused to disclaim the intent to recoup the $205,275,357.69 if the TRO (or any similar injunction) is lifted. That possibility keeps Counts I – VI live. *Cf. Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019) ("If there is any chance of money changing hands, [a] suit [for money damages] remains live.").

For these reasons, DOT's payment of the $205,275,357.69 under the condition that DOT might try to claw it back later has not mooted Counts I – VI. This Court can still very much provide GDC with meaningful relief, through an enforceable money judgment in the amount of $205,275,357.69. This would give GDC what it has requested, and what it to date does not have—the $205,275,357.69 free and clear.

**B. This Court Has Jurisdiction to Resolve Counts I – VI Under 28 U.S.C. § 1491(a).**

The government alternatively asserts that, because DOT sent GDC the $205,275,357.69 without any assurance that it would let GDC keep it, this Court "no longer" has "any cognizable basis" under the Tucker Act "to exercise jurisdiction over Counts I – VI." Gov't Br. at 14. To

11

hear the government tell it, its post-complaint action has left GDC with "no damages" and transformed Counts I – VI into claims seeking "advisory opinion[s]," "declaratory judgment[s]," or "nominal damages to merely recognize the existence of a breach." *Id.* at 13-14. This is wrong; this Court's 28 U.S.C. § 1491(a) jurisdiction attached to Counts I – VI when GDC filed its complaint, and the government's post-filing actions have not affected that statutory grant.

The general, "long-standing rule in the Federal courts" is "that jurisdiction is determined at the time the suit is filed and, after vesting, cannot be ousted by subsequent events, including action by the parties." *F. Alderete Gen. Contractors, Inc. v. United States*, 715 F.2d 1476, 1480 (Fed. Cir. 1983); *see Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1365 (Fed. Cir. 2012) ("Generally, jurisdiction of the court depends upon the state of things at the time of the action brought." (internal quotation marks omitted)). Indeed, the government itself has recognized, as it must, that the "general rule" "that jurisdiction is established at the time of filing" applies to the statutory jurisdictional grants in this Court. U.S. Dep't of Justice, Civil Resource Manual § 47 (Sep. 2013), https://perma.cc/W49H-7AN6.[4]

There can be no dispute—and the government in fact does not dispute—that at the time GDC filed its complaint, Counts I – VI fell within and activated this Court's § 1491(a) jurisdiction. "In determining whether the Court of Federal Claims has jurisdiction" under § 1491(a), "all that is required is a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008). In the contract context, "jurisdiction under [§ 1491(a)] requires no more than a

---

[4] There are exceptions to this general rule, but they do not apply. Indeed, the only established exception the government even invokes is mootness, and its arguments on that score fail. *See* pp. 7-11, *supra*.

non-frivolous allegation of a contract with the government." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) (emphasis omitted).  Counts I – VI comfortably clear this low bar:  they allege the existence of six contracts and that GDC is entitled to $205,275,357.69 under those contracts.    Compl. ¶¶ 184-327, Prayer for Relief; *see* Gov't Br. at 17 ("not challeng[ing]" these points).

The government's post-filing actions have not divested this Court of its § 1491(a) jurisdiction.  As the Federal Circuit has explained, where "it is post-complaint action by the government as defendant that is presented as changing the jurisdictional picture" under a federal statute, statutory jurisdiction is lost only in very limited circumstances:  "The appellate courts generally allow the government to defeat jurisdiction by post-complaint action *only* in the presence of *some specific* indication of Congressional intent that *such action* would defeat jurisdiction." *Ford Motor Co. v. United States*, 688 F.3d 1319, 1326 (Fed. Cir. 2012) (emphases added).  There is no indication, let alone any "specific" one, *id.*, that Congress in § 1491(a)(1) departed from the general rule that statutory jurisdiction vests at filing and stays vested where the government pulls the payment–with–possibility–of–recoupment maneuver it has pulled here.  Section 1491(a)(1) says nothing about "such action." *Id.*

Ultimately, the government's argument here is just a repackaging of its losing mootness argument.  There is no reason to think that Congress intended § 1491(a)(1) to contain any mootness principle, let alone to set a mootness bar lower than Article III's.

***

A losing mootness argument and a losing Tucker Act jurisdiction argument do not add up to a winning motion to dismiss.  Because this Court has both Article III and § 1491(a) jurisdiction over Counts I – VI, it should deny the government's motion and proceed to the merits.

13

## II.   THE GOVERNMENT HAS NOT MET ITS BURDEN TO ESTABLISH THE AFFIRMATIVE DEFENSE OF PAYMENT.

The government also argues that DOT's payment of the $205,275,357.69, along with the condition that DOT may try to take that money back later, establishes the government's entitlement to the scarcely-invoked-or-applied "affirmative defense of payment." Gov't Br. at 16. For the same reasons the government failed to establish mootness, it fails to establish a valid payment defense.

Payment provides "a valid defense to a breach of contract claim" where the defendant "makes *contractually required payments*." *Aspen Consulting, LLC v. Sec'y of Army*, 25 F.4th 1012, 1018 (Fed. Cir. 2022) (emphasis added) (internal quotation marks omitted). Restated, "[p]ayment is the satisfaction and discharge of a debt *according to its terms*." *Shipping Corp. of India v. Sun Oil Co.*, 569 F. Supp. 1248, 1260 (E.D. Pa. 1983) (emphasis added). Where, however, a defendant is asserting "the discharge of a demand by the giving and acceptance of something different from, or less than, that to which the creditor is entitled" under the contract, the defendant is asserting the defense of "accord and satisfaction." *Id.*; *see Chesapeake & Potomac Tel. Co. of Virginia v. United States*, 654 F.2d 711, 716 (Ct. Cl. 1981). As explained above, the government has given GDC something different than that to which GDC is entitled under the Agreements— funds the government claims the right to recoup, *see* pp. 7-11, *supra*, as opposed to funds free and clear, *see* GDC Br. at 29-35. Because the government does not reckon with this difference, Gov't Br. at 16-17, it has no valid payment defense.[5]

---

[5] The lone case the government cites involving a payment defense, *Thirteen Investment Company, Inc. v. Foremost Insurance Company Grand Rapids Michigan*, 67 F.4th 389 (7th Cir. 2023), looks nothing like this one. There, the defendant wrote and delivered checks before the plaintiff filed suit, and the issues were whether the defendant had delivered the checks to the correct entity (the defendant sent them not to the plaintiff, but to the plaintiff's designated public adjuster) and whether that other entity unilaterally cashing the checks constituted acceptance on the part of the

Further, the government does not even attempt to assert an accord and satisfaction defense based on DOT's provision of something other than that which GDC is entitled to under its Agreements, and if it had it would have failed because the government has not established that GDC agreed that DOT's alternative, subject–to–attempted–clawback form of trying to discharge its debt satisfies it. "On principle, nothing can be payment in fact except what is in truth such, unless specially agreed to be taken as its equivalent." *The Emily Souder*, 84 U.S. 666, 670 (1873); *see United States v. Isthmian Steamship Co.*, 359 U.S. 314, 318-19 (1959); *Chesapeake & Potomac Tel.*, 654 F.2d at 715-17. The government has made no effort to establish that GDC has agreed— and GDC has *not* agreed—that DOT's "strings-attached" payment is equivalent to and satisfies what it owes GDC under the Agreements. *See Chesapeake & Potomac Tel.*, 654 F.2d at 715-17 (government did not establish accord and satisfaction defense where plaintiff cashed four checks from government for less than amount claimed, because government did not "clearly indicat[e]" intention that plaintiff cashing checks were to operate as settlement in full).

## III.    THE GOVERNMENT BREACHED THE AGREEMENTS.

After all these threshold arguments, the government finally offers only a fleeting, conclusory assertion that it can prevail on the merits because DOT supposedly did not breach the Agreements. Gov't Br. at 17. That contention is unpersuasive. The record makes clear that DOT did breach the Agreements.

As GDC discussed in detail in its Brief, DOT breached the Agreements by suspending payment without complying with myriad substantive and procedural requirements under the Agreements and applicable federal regulations. GDC Br. at 30-33. For example, before

---

plaintiff. *Id.* at 392-95. The case was also governed by Illinois law, and the possibility of recoupment never arose. *Id.*

suspending payment, DOT needed to determine that GDC (1) breached or defaulted on the Agreements, (2) failed to make reasonable progress on the project, or (3) failed to comply with any law or the terms of the Agreements.  Ex.[6] 1 § 19(a); Ex. 2 § 11(a); Ex. 3, attach. 1, arts. 9.1-9.2; Ex. 5, arts. 16.1-16.2; Exs. 6-8, ex. D at D-2; Ex. 6 at 51-52; Exs. 7-8 at 52.  DOT also could not suspend or terminate funding without first (1) making a "final determination" of GDC's noncompliance, Ex. 3, attach. 1, arts. 9.1-9.2; Ex. 5, art. 16.1-16.2, (2) "determin[ing] that noncompliance cannot be remedied by imposing specific conditions," 2 C.F.R. § 200.399, *and* (3) providing GDC notice and an opportunity to cure, Ex. 1 § 19(b); Ex. 3, attach. 1, art. 9.1; Ex. 5, arts. 16.1-16.2; Exs. 6-8 at 49.

The government does not dispute that DOT had these obligations and that it failed to fulfill them.  Instead, it points to DOT's DBE investigation into GDC and says its "suspension of disbursements and review of GDC's DBE policies and practices is consistent with" DOT's obligation to "ensure that Federal funding is expended and associated programs are implemented" in accordance with federal law.  Gov't Br. at 18-19.  But the Agreements require a final determination of noncompliance to justify a funding suspension, not merely concerns or an investigation—which is all the government has ever had.  Indeed, DOT began its DBE investigation in October 2025, yet even in its response brief here (filed nearly five months after the investigation began), DOT can speak only in speculative terms about hypothetical violations.  *See, e.g.*, *id.* at 21 ("*If* GDC failed to comply with Federal antidiscrimination law, or did not comply with the requirements of DOT's DBE program, then GDC *potentially would* fail to satisfy a condition precedent of the Agreements." (emphasis added)).  And even if the government could point to some statement that might be deemed a finding of noncompliance (which it cannot), it

---

[6] "Ex. __" refers to exhibits to the Complaint.

would not suffice unless it was made *before* the government withheld funds because the contracts expressly require both notice and an opportunity to cure.

Unable to identify the contractually required final determination of noncompliance, DOT instead relies—paradoxically—on evidence showing GDC's cooperation during DOT's investigation and the steps GDC has taken to comply with executive orders and subsequent FTA guidance. Far from demonstrating defiance, that evidence underscores GDC's commitment to following federal law and guidance. For example, when DOT told GDC it "intend[ed] to recommence reimbursements upon [a] certification" from GDC, Ex. 19 at 2, GDC promptly provided that certification, Ex. 20. In addition, GDC committed to review all DBE subcontractors in response to specific DOT concerns, *id.*, and, on January 8, 2026, GDC sent DOT a letter explaining that GDC had completed its review of each of its subcontractors' DBE status and confirmed that all conformed to DOT's regulatory requirements, Ex. 21. GDC never received a response to that letter. GDC Br. at 19. And despite having information responsive to DOT's investigation from GDC now for five months, the government has never identified anything to support any final determination of noncompliance (for the simple reason there is *nothing* to support such a finding). *Id.* at 33-35.

In short, GDC's Complaint and Brief set out a series of straightforward and indisputable facts that lead inexorably to the conclusion that DOT has breached the plain terms of the Agreements by withholding payments without a finding of noncompliance and without providing notice and an opportunity to cure. Because DOT's response briefs do nothing to undermine that conclusion, partial summary judgment is warranted.

**IV.    THE GOVERNMENT HAS NOT MET ITS BURDEN TO POSTPONE SUMMARY JUDGMENT TO TAKE DISCOVERY UNDER RULE 56(d).**

Rule 56(d) permits a court to defer ruling on summary judgment "if the party opposing that motion sets forth, by affidavit, the explicit reasons why discovery is required," and "set[s] forth with some precision, the evidence it hopes to obtain, how this evidence would likely disclose issues of material fact, and why it is unable to access such evidence without further discovery." *Padilla v. United States*, 58 Fed. Cl. 585, 593 (2003) (internal quotation marks omitted).  In other words, Rule 56(d) "requires an affiant to *state reasons* why he cannot present by affidavit facts essential to justify his opposition to the motion for summary judgment."  *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1389 (Fed. Cir. 1989).  Rule 56(d) thus does not allow "discovery merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support" an opposition, *Padilla*, 58 Fed. Cl. at 593 (internal quotation marks omitted), nor "discovery that has no chance of leading to the denial of summary judgment for the movant," *RQ Squared, LLC v. United States*, 129 Fed. Cl. 742, 748 (2017).

The government's RCFC 56(d) request fails for at least three independent reasons.  First, the evidence the government hopes will turn up "has no chance of leading to the denial of summary judgment" for GDC.  *Id.*  In essence, the government hopes to retroactively justify DOT's funding suspension by finding some evidence of noncompliance on GDC's part.  *See* Gov't Br. at 21-23.  But, as GDC's Brief explained, the Agreements required DOT to make a final determination about GDC's noncompliance and give GDC notice of that determination and an opportunity to cure the noncompliance *before* DOT stopped paying.  GDC Br. at 29-33.  DOT never made such a final determination, and, even if anything DOT did could be understood as a determination, DOT never gave GDC notice and an opportunity to cure.  *Id.* at 30-35.

The government does not dispute these points—in fact, the government makes *no mention* of the Agreements' final determination, notice, and right to cure provisions. *See* Gov't Br. at 17-20. Indeed, the government itself acknowledges that evidence about GDC's noncompliance might not necessarily establish the government had no payment obligation under the Agreements. *See id.* at 21 ("If GDC failed to comply . . . , then GDC *potentially would* fail to satisfy a condition precedent of the Agreements, relieving the United States of any liability for breach of contract." (emphasis added)). The government's equivocation on this point is unsurprising: Any information the government might uncover *now* about purported noncompliance (and to be clear, there is *no* such information to uncover) cannot reach back months and retroactively justify or expunge DOT's past breaches of the Agreements. The Agreements' notice and cure provisions make clear that DOT must obtain any information it needs to make a finding of noncompliance *before* it withholds funding so that DOT can provide the contractually required notice and opportunity to cure. In other words, the Agreements themselves foreclose the government's effort to backfill a justification for its wrongful funding suspension through the use of this Court's compulsory process. The government's desired evidence thus cannot "create a genuine issue of material fact." *Padilla*, 58 Fed. Cl. at 593.

But the Court need not even reach that question because the government's Rule 56(d) request fails to satisfy two even simpler procedural prerequisites. For one, the government provides no "affidavit or declaration" that "specifie[s]" what information the government hopes to get. RCFC 56(d). The only sworn support the government provides for its Rule 56(d) request is paragraph 10 of the Declaration of Angela Williams, dated February 27, 2026, Dkt. No. 28-2 ("Williams Decl."). Gov't Br. at 22-23. That paragraph, however, merely attests that "DOT lacks any current factual information regarding GDC's compliance with the conditions of the

19

Agreements applicable to the DBE program, beyond publicly available information, the statements in GDC's letters, and the accompanying attachment to the January 8, 2026, letter."  Williams Decl. ¶ 10.  Nothing in that (or any other) paragraph attests to what material evidence the government believes would turn up or why GDC's copious efforts to provide information so far are not enough.  The government's "fail[ure] to comply with the requirement of Rule 56([d]) to set out reasons for the need for discovery *in an affidavit*" *or declaration* is reason enough to deny its request.  *See Keebler*, 866 F.2d at 1389 (emphasis added) (quotation omitted).

Finally, the government's identification of evidence it hopes to uncover lacks "any precision."  *Padilla*, 58 Fed. Cl. at 593.  The government vaguely asserts that it "would seek information underlying the statements that GDC made in its letters to DOT."  Gov't Br. at 22.  The government seems appropriately unsure that such information exists to help its case.  *See id.* at 2, Statement of the Issues ¶ 4 ("DOT does not possess full information to *potentially* rebut GDC's assertions." (emphasis added)); *id.* at 21 ("*If* GDC failed to comply . . . ." (emphasis added)).  Indeed, all the government can say is that it hopes to "explore" a defense based on this mystery "information" and "evidence."  *Id.* at 22-23.  One cannot blame the government; it cannot go further because there is absolutely no basis for the government's concerns.  But this inability to make a concrete statement even about what it is looking for defeats its Rule 56(d) request.

## V.   THE COURT SHOULD DIRECT ENTRY OF FINAL JUDGMENT FOR GDC ON COUNTS I – VI IN THE AMOUNT OF $205,275,358.

This Court can and should enter partial final judgment for GDC on Counts I – VI under RCFC 54(b), including because there is "no just reason for delay" due to the magnitude of what GDC is owed and because it does not appear that the amount can accrue interest.  GDC Br. at 26-27, 39-40; *see Loc. Initiative Health Auth. for L.A. Cnty. v. United States*, 145 Fed. Cl. 746, 750-

51 (2019); *Conn. Yankee Atomic Power Co. v. United States*, 142 Fed. Cl. 87, 91 (2019). The government does not meaningfully contest either of these points.

With respect to the magnitude of damages, the government argues that "GDC's assertions regarding the magnitude of its monetary damages no longer ha[ve] force here, because GDC has no damages." Gov't Br. at 23. This is yet another retread of the government's mootness argument, which remains incorrect as GDC has not received the unconditional, free-and-clear payment it seeks and is owed. *See* pp. 7-11, 14-15, *supra*. As to interest, the government puzzlingly argues that "the unavailability of interest is simply a function of the limited scope of the Government's waiver of sovereign immunity in cases such as this, and Congress's choice in that regard cannot support a determination that there is no just cause for delay." Gov't Br. at 23. But it is precisely because Congress apparently made this choice that this Court has repeatedly held that it is such an "injustice" to postpone directing judgment to plaintiffs for the money the government "unquestionably owes." *Loc. Initiative Health Auth.*, 145 Fed. Cl. at 751; *see Conn. Yankee*, 142 Fed. Cl. at 91; *Am. Sav. Bank, F.A. v. United States*, 83 Fed. Cl. 555, 559 (2008) ("[I]f partial judgment is not awarded, it is as if the Government is receiving an interest free loan on behalf of the Plaintiffs."). Unsurprisingly, the government cites no case law to support either of its arguments.[7]

---

[7] The cases the government cites do not help it. *See* Gov't Br. at 23. In *Intergraph Corp. v. Intel Corp.*, the Federal Circuit *affirmed* the district court's grant of partial final judgment, recognizing trial courts' "substantial discretion in determining when there is no just cause for delay in entering judgment under Rule 54(b)." 253 F.3d 695, 699 (Fed. Cir. 2001). In *Brunswick Corp. v. Sheridan*, the Second Circuit reversed the entry of final judgment on defendant's counterclaim that was "largely the same" as defendant's affirmative defense to the "main claim" in the action, which had not been decided, and where there were "no significant affirmative factors" supporting the request for partial final judgment. *See* 582 F.2d 175, 183-85 (2d Cir. 1978). Here, however, the government does not dispute that GDC requests partial final judgment on distinct contract claims seeking distinct damages. *See Little River Lumber Co. v. United States*, 21 Cl. Ct. 527, 536 (1990);

The events that have occurred since GDC filed its MPSJ brief only confirm why the Court should enter an order of final judgment for GDC. As it stands, GDC has resumed work on the HTP because of the payments GDC has received since the TRO has been in force. *See McCoy Mot. to Amend Decl. ¶ 4.*[8] But given the government's repeated refusal to disclaim a clawback right, GDC, its employees, its contractors, and its subcontractors all must move the HTP forward with the knowledge that the government may, at any moment, try to take back the funds GDC badly needs to continue work on the project. *See Bank of Lincolnwood v. Fed. Leasing, Inc.*, 622 F.2d 944, 951 (7th Cir. 1980) ("The just economic interest of [plaintiff] in the prompt entry of a final enforcement judgment [i]s a factor which the trial court c[an] properly consider.").

Further, as this Court recognized at the February 24 status conference, the government's statement that DOT might try to recoup money and may breach the Agreements again by failing to provide future reimbursements "counsels in favor of a Rule 54[b] judgment" on Counts I – VI. Feb. 24, 2026 Hr'g Tr. at 25. As the Court explained, the potential of future breaches may suggest that the Court "should go ahead and expedite the ruling so that DOT" and GDC can get closer to "certainty" and can "avoid the prospect of future breaches." *Id.*; *see also* Oral Arg. Audio at 9:42-10:19, *New Jersey*, No. 26-00282 (2d Cir. Mar. 3, 2026) (discussing DOT's "ability to not pay [under the Agreements] going forward" if this Court "finds that [DOT] breached" the Agreements under Counts I – VI). The Court's suggestions were spot-on. Bringing swift resolution to this period of uncertainty through entry of partial final judgment on Counts I – VI would "undeniably

---

*Loc. Initiative Health Auth.*, 145 Fed. Cl. at 750; *see also Intergraph*, 253 F.3d at 699 ("Even for claims that arise out of the same transaction or occurrence, sound case management may warrant entry of partial final judgment."). Further, GDC has shown that several factors weigh against delaying final judgment here.

[8] Decl. of Patrick J. McCoy in Supp. of Pl.'s Mem. Opp'n to Mot. to Amend, dated Feb. 23, 2026, Dkt. No. 24-1.

22

serve[] the ends of justice" by giving the many stakeholders involved in the HTP comfort that they will not have restarted work on the HTP just to have funding clawed back and the rug swept out from under their feet. *See Conn. Yankee*, 142 Fed. Cl. at 91 (quoting *Am. Sav. Bank*, 83 Fed. Cl. at 559).

## **CONCLUSION**

The Court should deny the government's partial motion to dismiss, grant summary judgment for GDC on Counts I – VI, and enter final judgment for GDC on Counts I – VI in the amount of $205,275,357.69.

Dated: March 6, 2026
      Washington, D.C.

Respectfully submitted,

/s/ *Neal Kumar Katyal*

Neal Kumar Katyal
Colleen E. Roh Sinzdak
MILBANK LLP
1101 New York Ave. NW
Washington, D.C. 20005
Telephone:  (202) 835-7505
Email:  nkatyal@milbank.com
Email:  crohsinzdak@milbank.com

Gurbir S. Grewal
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone:  (212) 530-5775
Email:  ggrewal@milbank.com

John R. Prairie
Andrew J. Pincus*
J. Ryan Frazee
MAYER BROWN LLP
1999 K Street NW
Washington, D.C. 20006
Telephone:  (202) 263-3000
Email:  jprairie@mayerbrown.com
Email:  apincus@mayerbrown.com
Email:  rfrazee@mayerbrown.com

Graham White*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500
Email:  gwhite@mayerbrown.com

*Counsel for Gateway Development Commission*

* *Pro hac vice application forthcoming*

24