No. 26-176C
(Judge Hertling)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

GATEWAY DEVELOPMENT COMMISSION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS,
AND REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY PURSUANT TO
RULE 56(d)**

---

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

GEOFFREY M. LONG
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington D.C.  20044
Telephone: (202) 307-1059
E-Mail: Geoffrey.M.Long@usdoj.gov

March 11, 2026                    Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ...................................................................................................................... 2

    I.      Counts I–VI of The Complaint Should Be Dismissed as Moot .............................. 2

          A.      Mootness of A Claim Divests This Court of Jurisdiction ........................... 2

          B.      GDC Cannot Secure A Money Judgment Because It
                 Already Has Been Paid ............................................................................... 3

          C.      DOT's *Actual Payment* of $205,275,357.69 Distinguishes
                 This Case From Those on Which GDC Relies ........................................... 5

    II.     Limited Discovery Should Be Permitted Pursuant to RCFC 56(d) ........................ 9

CONCLUSION .................................................................................................................. 11

## TABLE OF AUTHORITIES

<u>Cases</u>

*112 Genesee St., LLC v. United States*,
    172 Fed. Cl. 426 (2024), *aff'd*, 166 F.4th 1017 (Fed. Cir. 2026) ................................................ 8

*Associated Energy Group, LLC v. United States*,
    131 F.4th 1312 (Fed. Cir. 2025) ............................................................................................. 3

*Austin v. United States,*
    206 Ct. Cl. 719 (1975) ............................................................................................................ 3

*BroadReach Healthcare Pty Ltd. v. United States*,
    177 Fed. Cl. 371 (2025) .......................................................................................................... 3

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) ................................................................................................................ 6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................................................. 11

*Dunkin' Donuts of Am. v. Metallurgical Exoproducts Corp.,*
    840 F.2d 917 (Fed. Cir. 1988) .............................................................................................. 10

*FBI v. Fikre*,
    601 U.S. 234 (2024) ........................................................................................................... 3, 6

*Federal Election Commission v. Wisconsin Right To Life, Inc.*,
    551 U.S. 449 (2007) ................................................................................................................ 7

*Gates v. Towery*,
    430 F.3d 429 (7th Cir. 2005) .................................................................................................. 8

*James v. Caldera*,
    159 F.3d 573 (Fed. Cir. 1998) ................................................................................................ 3

*Jarrett v. United States*,
    79 F.4th 675 (6th Cir. 2023) ............................................................................................... 5, 6

*Knox v. Service Employees International Union, Local 1000*,
    567 U.S. 298 (2012) ................................................................................................................ 7

*Landram v. United States*,
    229 Ct. Cl. 855 (1982) ............................................................................................................ 8

*Mission Product Holdings, Inc. v. Tempnology, LLC*,
    587 U.S. 370 (2019) ............................................................................................................ 8, 9

*North Carolina v. Rice*,
   404 U.S. 244 (1971)................................................................................................. 3

*Rothe Development Corp. v. Department of Defense*,
   413 F.3d 1327 (Fed. Cir. 2005).............................................................................. 6

*Rothe Development Corp. v. Department of Defense*,
   545 F.3d 1023 (Fed. Cir. 2008).............................................................................. 6

*RQ Squared, LLC v. United States*,
   129 Fed. Cl. 742 (2017).......................................................................................... 9

*Tender Years Learning Corp. v. United States*,
   134 Fed. Cl. 336 (2017)....................................................................................... 7, 8

*Todd Constr., L.P. v. United States*,
   85 Fed. Cl. 34 (2008) ............................................................................................. 3

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
   513 U.S. 18 (1994)................................................................................................. 3

Statutes

28 U.S.C. § 1491(a)(1).................................................................................................. 3, 5

28 U.S.C. § 1491(a)(2)..................................................................................................... 5

28 U.S.C. § 1491(b)(1) .................................................................................................... 8

Rules

RCFC 56(d)................................................................................................................. 9, 10

Regulations

2 C.F.R. § 200.339 ........................................................................................................... 4

2 C.F.R. § 200.410 ........................................................................................................... 4

Other Authorities

22A Am. Jur. 2d Declaratory Judgments § 2 .................................................................. 5

13C C. Wright, A. Miller & E. Cooper,
   Federal Practice and Procedure § 3533.3 (3d ed. 2008) ....................................... 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GATEWAY DEVELOPMENT COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 26-176C Judge Hertling |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS, AND REPLY IN SUPPORT OF ITS MOTION FOR DISCOVERY PURSUANT TO RULE 56(d)**

Defendant, the United States, respectfully submits this reply in support of its motion to dismiss as moot Counts I–VI of the complaint filed by plaintiff, Gateway Development Commission (GDC).[1]  GDC has received the $205,275,357.69 that it seeks in those counts.  The money has not merely been tendered or offered – GDC possesses and presumably is spending it. Yet GDC wants more, asserting that it is entitled to the money "free and clear."  Whatever that term might mean, GDC in this case is at most entitled to monetary damages.  GDC cannot secure a declaration that the Government would be in breach if it took some future action, and GDC cannot be provided injunctive relief that might prevent the Government from taking actions in the future.  This Court is authorized in this instance only to award monetary damages, and GDC has received the money.  The counts are therefore moot.

Additionally, for the reasons set forth below, to the extent the Court does not dismiss Counts I–VI of the complaint as moot, and also does not simply deny GDC's motion for partial

---

[1]  We adopt in this brief the defined terms used in our partial motion to dismiss.  For example, "Agreements" refers to the set of six agreements on which GDC bases its breach claims.

summary judgment (MPSJ), the Court should permit the Government to conduct limited discovery, pursuant to Rule 56(d) of the Rules of the Court of Federal Claims (RCFC), on the issue of GDC's compliance with Disadvantaged Business Enterprises (DBE) program requirements.

**ARGUMENT**

**I.      Counts I–VI of The Complaint Should Be Dismissed as Moot**

Counts I–VI of GDC's complaint are based exclusively on the U.S. Department of Transportation's prior non-reimbursement of requests submitted to DOT by GDC, from August 2025 through December 2025.  *See* Pl. MPSJ Mem. at 46-48, ECF No. 18-1.  In other words, GDC seeks in those counts and in its motion for partial summary judgment exactly the amount it alleged to be due in response to those reimbursement requests, *i.e.*, $205,275,357.69.

There is no dispute that these reimbursements have now been made.  DOT has not merely (1) suggested that it *might* pay, (2) made an offer to pay conditioned on some action by GDC, or (3) otherwise taken some action that stops short of fully compensating GDC under the Agreements.  The money has been transferred to GDC's accounts, and GDC accepted the funds.

**A.      Mootness of A Claim Divests This Court of Jurisdiction**

With those indisputable facts established, we turn to GDC's second argument on mootness, which is a challenge to our assertion that, "following DOT's tendering of $205,275,357.69, there is no longer any cognizable basis for this Court to exercise jurisdiction over Counts I–VI."  Def. MTD at 14, ECF No. 28; *see* Pl. Resp. at 11, ECF No. 36 (quoting our brief).  GDC asserts in response that "[t]he government's post-filing actions have not divested this Court of its § 1491(a) jurisdiction."  Pl. Resp. at 13.

Our prior statement is incomplete, because the Government has not merely "tender[ed]" those amounts to GDC – *it has actually paid*.  But our larger point with respect to the Court's

2

jurisdiction is simply that "mootness . . . is a threshold jurisdictional issue." *Associated Energy Group, LLC v. United States*, 131 F.4th 1312, 1317 (Fed. Cir. 2025).  It "derives from the case or controversy requirement of Article III of the Constitution." *BroadReach Healthcare Pty Ltd. v. United States*, 177 Fed. Cl. 371, 375 (2025) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  And so the Court *must* resolve the question of mootness before proceeding to the merits.  *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 21 (1994) ("Of course, no statute could authorize a federal court to decide the merits of a legal question not posed in an Article III case or controversy.").

Nor may GDC evade the divestment of jurisdiction by seeking an advisory opinion, a declaratory judgment, nominal damages, or an injunction, because the Court lacks jurisdiction to provide those forms of relief.  *See* Def. MTD at 13-14.  In cases brought pursuant to 28 U.S.C. § 1491(a)(1), this Court "has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting *Austin v. United States,* 206 Ct. Cl. 719, 723 (1975), *superseded by statute on other grounds as stated in Todd Constr., L.P. v. United States*, 85 Fed. Cl. 34 (2008)).  If the claims seeking a money judgment are moot, then the Court must dismiss those claims.

**B.** **GDC Cannot Secure A Money Judgment Because It Already Has Been Paid**

There can be no money judgment here, because GDC has secured the relief it seeks outside of this litigation.  GDC's basic argument is that it has not received all the relief that it might have won in this litigation.  *See* Pl. Resp. at 7 (citing *FBI v. Fikre*, 601 U.S. 234, 240 (2024)).  That claim is incorrect – GDC could not do better in this litigation than it has through DOT's payment of the reimbursement requests outside of this litigation.  That is so because, as noted above, the Court can do nothing more than issue a money judgment.  Indeed, that is all GDC has sought.  *See* Compl. at 74, ECF No. 1 ("GDC requests that the Court enter judgment"

3

by "[a]warding money damages to GDC in the amount of $205,275,358 for DOT's failure to make required payments and disbursements under the HTP Grant and Loan Agreements due on or before February 2, 2026."). Having succeeded in district court (through an APA action brought by the states that created GDC), GDC cannot now shift its claim to seek some declaration that it owns the money in its possession "free and clear." Putting aside the vagueness of that demand and a lack of any identified duty under the Agreements for DOT to do so (which itself hints at the impossibility of the relief that GDC seeks), such declarations simply are not within this Court's powers.

Both Federal regulations and the Agreements permit the Government to withhold funds or seek recoupment in certain circumstances. *See, e.g.*, 2 C.F.R. § 200.339 (remedies for noncompliance with the Constitution, Federal statutes, regulations, or terms and conditions of the Federal award); *id.* § 200.410 (collection of unallowable costs); FTA CIG Grant § 19(a), Compl. Ex. 1 ("The Grantee recognizes that in the event of default, the Government may demand all Federal funds provided to the Grantee for the Project be returned [to the] Government.").

If DOT in the future did seek to withhold future payments, based on a conclusion that the agency should not have paid the August 2025 through December 2025 reimbursements, GDC might return to this Court and assert that such actions constituted a breach of contract. But that would be a *new* breach claim – which has yet to accrue and is plainly unripe here – based on a future nonpayment of future requested reimbursements. And the Court would then need to consider the rights and obligations of the parties and decide whether the Government's action amounted to breach with reference to those rights and obligations, including the Government's rights to withhold or recoup payments. Whether or not such future actions would support a future breach claim, they cannot support the breach claim that GDC has already asserted,

4

because DOT has performed under the Agreements as to the reimbursement requests at issue. There is nothing for the Court to do.

Having secured the relief it wanted, GDC is reaching further, beyond a money judgment. It now effectively seeks the following judgment:  "If DOT were to take X action in the future, that would constitute a breach of contract."  For the reasons set forth above, the Court is not empowered to issue such a judgment, which is declaratory in effect.  *See* 22A Am. Jur. 2d Declaratory Judgments § 2 ("A declaratory judgment affords only prospective, forward-looking relief, or preventative noncoercive relief, as a prophylactic measure, designed to resolve a controversy and prevent future damages, not to address past wrongs.").  This Court under 28 U.S.C. § 1491(a)(1) is only empowered to address past breaches.[2]

### C.    DOT's *Actual Payment* of $205,275,357.69 Distinguishes This Case From Those on Which GDC Relies

We have emphasized above that DOT has actually paid GDC the amounts sought in Counts I–VI of the complaint.  To be sure, DOT made the payments in response to a court order. But that fact is utterly irrelevant, as demonstrated by the cases cited by GDC in response to our motion.  None of them involved circumstances like this case.

*Jarrett v. United States*, 79 F.4th 675 (6th Cir. 2023), is fundamentally unhelpful to GDC. We perhaps should have noted more clearly in our moving brief the most basic facts of the case: After Mr. Jarrett sued the Internal Revenue Service (IRS), the agency "responded by issuing a full refund check."  *Id.* at 676.  But Mr. Jarrett "refused to cash it."  *Id.*  Thus, the money

---

[2] As we noted in our moving brief, at 13-14 n.8, for certain contract claims brought pursuant to the Contract Disputes Act of 1978 (CDA) non-monetary relief, including a declaratory judgment is available.  *See* 28 U.S.C. § 1491(a)(2).  But GDC's breach claim is not pursuant to the CDA and non-monetary relief is not available in this case.  *See* 28 U.S.C. § 1491(a)(2).

underlying the parties' dispute was still in the IRS's possession.  The Sixth Circuit still had no trouble finding the taxpayer's claims moot, because the agency had tendered the money without conditions, *id.* at 680, but the salient point is that here GDC has the $205 million that it sought.[3]

To similar effect, GDC cites *Rothe Development Corp. v. Department of Defense*, 545 F.3d 1023 (Fed. Cir. 2008), for the proposition that "although a damages tender may moot a claim, 'an *actual* tender is required for mootness.'"  Pl. Resp. at 9 (quoting 545 F.3d at 1032). The *Rothe* decision cited by GDC mentions mootness only in passing – the Federal Circuit's analysis is contained in *Rothe Development Corp. v. Department of Defense*, 413 F.3d 1327 (Fed. Cir. 2005).  There, the court held that a damages claim was not moot because "the government . . . provided no evidence that it produced the subject matter of the tender, *e.g.,* by providing Rothe with a $10,000 check or depositing such a check with the court."  *Id.* at 1331-32.  Again, that is not this case.

GDC's other cited cases also do not help it.  *FBI v. Fikre*, 601 U.S. 234 (2024), did not involve a breach of contract claim, but rather an airline passenger's placement on a no-fly list.  In that context, the Supreme Court found that the possibility that the individual would be placed back on a no-fly list precluded mootness of the plaintiff's claim for declaratory and injunctive relief.  *See id.* at 239 (noting that plaintiff had sought "a declaratory judgment confirming that the government had violated his rights, as well as an injunction prohibiting it from keeping him on the No Fly List").  That requested relief is very different from a breach of contract claim,

---

[3]  Justice Thomas's concurrence in *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), is to similar effect.  Justice Thomas was focused on the point that "at common law, a defendant or prospective defendant had to furnish far more than a mere offer of settlement to end a case." *Id.* at 171; *see also Jarrett*, 79 F.4th 680-81 (distinguishing *Campbell-Ewald* based on the difference between an offer and a payment, and unique concerns that may arise in a class action). Here, there has been payment.

which is inherently retrospective in nature.  The same is true of *Federal Election Commission v. Wisconsin Right To Life, Inc.*, 551 U.S. 449 (2007).  *See* Pl. Resp. at 7.  There too, the plaintiff sought "declaratory and injunctive relief."  551 U.S. at 460.

*Knox v. Service Employees International Union, Local 1000*, 567 U.S. 298, 307 (2012), supports the Government's position here.  In that case, a union was sued for over-collecting funds from its members.  After certiorari was granted, the union mailed a refund notice.  In response to the union's subsequent mootness argument, the Supreme Court expressed a concern that, if the case were dismissed, the union would attempt to collect similar fees in the future.  *See id.* at 307.  The union asserted that such voluntary cessation concerns were inapplicable, because the petitioners "[did] not seek any prospective relief."  *Id.*  The Supreme Court implicitly acknowledged this concern, finding the case not moot based only on the petitioner's continued request for some retrospective relief:  "[E]ven if that is so, the union's mootness argument fails because there is still a live controversy as to the adequacy of the SEIU's refund notice," which allegedly contained "conditions, caveats, and confusions aimed at reducing the number of class members who would seek a refund."  *Id.* at 307-08 (cleaned up).  Here, however, the Court cannot grant prospective relief, and unlike *Knox* any possible retrospective relief as to Counts I–VI of the complaint has already been secured.

*Tender Years Learning Corp. v. United States*, 134 Fed. Cl. 336, 343 (2017), cited by both parties, does not support GDC's position.  In that bid protest, the plaintiff asserted that the United States had breached an implied-in-fact contract requiring the Government to fairly consider plaintiff's response to a solicitation.  The Government asserted that the case was moot because it had taken corrective action by cancelling the challenged funding opportunity announcement.  *See id.* at 343.  In rejecting this argument, the Court distinguished its bid protest

jurisdiction under 28 U.S.C. § 1491(b)(1) from claims arising under § 1491(a)(1).  As to the latter, the Court held that cessation of a challenged activity would not suffice to moot a case, unless there was payment by the Government:

> Instead, the Government can only moot a breach of contract claim by paying all of the plaintiff's claimed contract damages or performing under the contract in full.  *See Landram v. United States*, 229 Ct. Cl. 855, 856 (1982) ("Defendant has fully performed the contracts and, as such, has forestalled any claim for breach of contract."); *cf. Gates v. Towery*, 430 F.3d 429, 432 (7th Cir. 2005) ("To eliminate the controversy and make a suit moot, the defendant must satisfy the plaintiffs' *demands*; only then does no dispute remain between the parties.") (emphasis in original).  This outcome is logical in the context of a solicitation like the 2014 FOA, as canceling and restarting the solicitation does not make a plaintiff's potential contract damages from the original solicitation disappear.

*Tender Years*, 134 Fed. Cl. at 343-44.  Here, the Government *has satisfied GDC's demands*, by fulling performing under the Agreements.  The circumstances identified by the Court in *Tender Years* as potentially mooting a breach claim have in fact occurred here.

GDC also again cites the Court's decision in *112 Genesee St., LLC v. United States*, 172 Fed. Cl. 426 (2024), *aff'd*, 166 F.4th 1017 (Fed. Cir. 2026).  *See* Pl. Resp. at 8.  But as we explained in our motion to dismiss, the Court there rejected the Government's mootness argument – which had been based on a lack of funds in the Restaurant Revitalization Fund – because any judgment would be paid from the Judgment Fund.  *See id.* at 450.  Here, mootness arises from GDC already being paid, rather than the unavailability of funds to pay it.  *112 Genesee St.* therefore is inapposite.

Finally, GDC is not assisted by *Mission Product Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370 (2019).  *See* Pl. Resp. at 11.  The Supreme Court in that case did state that "[i]f there is any chance of money changing hands, [plaintiff's] suit remains live."  *Id.* at 377.  But the context of that comment is critical:  The statement was almost immediately preceded by the

8

Court's broader observation that "nothing so shows a continuing stake in a dispute's outcome as a demand for dollars and cents." *Id.* (citing 13C C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3533.3, p. 2 (3d ed. 2008)). Because the plaintiff there continued to demand money, the case was not moot. *See id.* at 377-378. In other words, it was the continued possibility that the plaintiff would receive a money judgment that avoided mootness. The Court did not hold that the mootness of a breach of contract claim may be avoided by the plaintiff invoking hypothetical future events.

In none of GDC's cited cases did a court decline to find mootness in a situation like this, where the plaintiff could only seek retrospective breach damages, and where the defendant has now fully performed the actions alleged to have constituted breach. Counts I–VI are moot and must be dismissed.

## II.    Limited Discovery Should Be Permitted Pursuant to RCFC 56(d)

In addition to seeking dismissal on mootness grounds and opposing GDC's MPSJ, we have also moved for discovery pursuant to RCFC 56(d). *See* Def. MTD at 20-23. GDC offers three responses. First, it asserts that the evidence the government hopes will turn up "has no chance of leading to the denial of summary judgment" for GDC. Pl. Resp. at 18 (citing *RQ Squared, LLC v. United States*, 129 Fed. Cl. 742, 748 (2017)).[4] In GDC's view, that is so because even if GDC violated the Agreements, DOT was required to engage in a notice process before suspending payments. *See* Pl. Resp. at 18.

---

[4] *RO Squared* is unhelpful to GDC because the Court in that case had already allowed the plaintiff discovery, and the plaintiff was unable to articulate why it needed more. *See* 129 Fed. Cl. at 755-56. Here, in contrast, the Government has never been permitted to receive discovery as to GDC's compliance with DBE requirements.

This is in essence an assertion that GDC's DBE practices can *never* relieve the United States from engaging in the notice process described by GDC in its MPSJ.  That argument places the cart before the horse.  The Government should be permitted to develop evidence concerning GDC's compliance with contractual and regulatory requirements, to explore an affirmative defense that GDC has not complied with the terms of the Agreements.  Unless and until that discovery is conducted, it is not possible for the Court to hold that *all* possible violations by GDC are subject to notice requirements, and that therefore it would be impossible for the Government to avoid summary judgment on the basis of GDC's failure to comply with a condition precedent.

GDC's other bases for opposition also fall short.  GDC asserts that the RCFC 56(d) motion should be denied because the declaration we have submitted states – inadequately in GDC's view – that DOT lacks full information regarding GDC's compliance with the conditions of the Agreements applicable to the DBE program.  *See* Williams Decl. ¶ 10.  GDC does not dispute this assertion – it merely faults the Government for not "attest[ing] to what material evidence the Government believes will turn up."  Pl. Resp. at 20.  GDC furthermore claims that the Government's request lacks precision.  *See id.*  In this circumstance, however, where the lawsuit was filed just over a month ago, and no discovery has been conducted, it would be unreasonable for the Court to expect the Government to identify specific aspects of GDC's performance that may not have complied with contractual requirements.  We concede that more specificity might be expected if a party were seeking *additional* discovery.  Here, however, there has been no discovery at all, and the Court should defer to the general rule that discovery should be conducted prior to ruling on summary judgment.  *See Dunkin' Donuts of Am. v. Metallurgical Exoproducts Corp.,* 840 F.2d 917, 919 (Fed. Cir. 1988) ("The Supreme Court has made clear that

summary judgment is inappropriate unless a tribunal permits the parties adequate time for discovery." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986))).

## CONCLUSION

For these reasons and those set forth in our partial motion to dismiss, the Court should dismiss as moot Counts I–VI of GDC's complaint.  To the extent the Court declines to do so, and also declines to outright deny GDC's MPSJ, the Court should hold GDC's MPSJ in continuance to permit the Government to conduct discovery regarding GDC's compliance with DBE requirements.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Geoffrey M. Long
GEOFFREY M. LONG
Assistant Director
BRENDAN JORDAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington D.C.  20044
Telephone: (202) 307-0159
E-Mail: Geoffrey.M.Long@usdoj.gov

March 11, 2026                              Attorneys for Defendant

11